A. D. NELSON *vs.* U. J. THOMPSON and others.

April 9, 1877.

**Variance—When Question must be Raised.**—A question of mere variance between the complaint and the proof will not be entertained in this court, when it was not raised in the court below.

**New Trial—Erroneous Instruction as to Issue Submitted to Jury — Conflicting Evidence on Issue Withdrawn by Court from Jury.**—Where, under the instructions of the court, a verdict is rendered in favor of defendant upon one of two distinct issues of fact, upon either of which such a verdict would dispose of the whole case, and when the verdict so found is, upon plaintiff's motion, set aside by the court because of an erroneous ruling in reference to the issue so submitted and passed upon by the jury, on a review of such decision, on appeal, it will not be overruled on the ground that the verdict ought to be sustained upon the evidence applicable to the other issue, it appearing that such evidence was so conflicting as to raise at least a reasonable doubt whether the finding of the jury thereon might not have been rightly adverse to the defendant in case that issue had been properly submitted to them.

**Lease—Surrender.**—A surrender of a lease, and the estate thereby created, can only take place by mutual agreement to that effect between the lessor and lessee, or, where the surrender is claimed as against one of the parties to the lease, by some act done by such party inconsistent with the continuance of the term, the validity of which, upon the principle of estoppel, he is precluded in law from disputing.

By lease under seal the plaintiff demised to defendants a dwelling-house in St. Paul, for the term of one year from

June 1, 1874, at the rent of $40 per month, which the defendants covenanted to pay monthly, in advance. The plaintiff brought this action in the court of common pleas of Ramsey county, to recover the rent for the months of February, March, and April, 1875, alleging that no part thereof had been paid except the sum of $13.33 paid on account of the rent for February, and $30 paid on account of rent for April. Among other defences the defendants pleaded an agreement made in October, 1874, with plaintiff's agent, authorizing the defendants to terminate the lease on ten days' notice, the giving of such notice on January 31, 1875, and the consequent termination of the lease on February 10, 1875, when they delivered up the premises, paying the rent in full to that date. At the trial before *Brill*, J., the defendants introduced evidence tending to prove this agreement, and counter-evidence was introduced by plaintiff; but the court instructed the jury that this defence had not been made out. Evidence was introduced by both plaintiff and defendants upon the question whether the defendants had, on February 10, 1875, surrendered the lease to the plaintiff's agent, and such surrender had been accepted by him. It was not disputed that, on that day, the defendants vacated the premises, delivered the key to plaintiff's agent, and paid $20, the balance of rent due for January, and $13.33 besides. The evidence as to what took place between the parties at that time is stated in the opinion. It also appeared that the premises remained vacant until April 1st, when they were let by plaintiff's agent to one Lewis, at the rent of $30 per month. On the only issue left to them— that as to the alleged surrender on February 10th—the jury found for the defendants. A motion for a new trial was granted by *Brill* and *Simons*, JJ., on the ground that the verdict was against evidence, and that the court erred in instructing the jury that defendants were released in case the key was left with plaintiff's agent, and possession of the

premises taken by him, without any understanding between them that defendants should continue liable for the rent, and were not to be released. From the order granting a new trial the defendants appeal.

*Mead & Thompson,* for appellants.

*O'Brien & Eller,* for respondent.

CORNELL, J.   The point of alleged variance between the complaint and the evidence is one that, had it been made in the district court, might, and in the rightful exercise of its discretion ought, upon motion, to have been obviated. It comes too late, therefore, to be considered on this appeal. *Babcock* v. *Sanborn,* 3 Minn. 141; *Washburn* v. *Winslow,* 16 Minn. 33.

Under the testimony two separate and distinct issues were raised, the determination of either of which in defendants' favor would, as it is claimed, have entitled them to a verdict upon the whole case. Upon the submission of the case to the jury the court, in its charge, confined them to the consideration of one of these issues alone, and the evidence applicable thereto, thereby wholly withdrawing the other from their consideration. Under this ruling a verdict was rendered in favor of the defendants, which, on motion of plaintiff, was set aside because of an erroneous instruction in reference to the issue thus submitted to and passed upon by the jury. Conceding the correctness of the decision upon the motion on this point, it is contended that the verdict ought not to have been set aside, because, upon the whole evidence, the defendants were entitled to a verdict upon the other issue. As to this issue, viewed in the most favorable light possible for defendants, its determination depended upon a disputed fact, concerning which there was conflicting evidence, sufficient at least to raise a reasonable doubt as to what might legally have been the finding of the jury thereon. It cannot, therefore, be assumed by this court that the verdict upon this issue would have been for

the defendants, in case it had been properly submitted to the jury, and the decision of the district court in awarding a new trial cannot be overruled upon this ground.

The remaining question relates to the alleged surrender of defendants' lease and their estate thereunder. Upon the testimony, the fact is undisputed that defendant Thompson, having removed from the premises on February 10th, went to plaintiff's agent, Farrington, for the purpose of paying the rent to that time and surrendering up the premises to plaintiff. In reference to what then took place, she testifies : " I told Mr. Farrington that I came to give him the key and pay the rent. He said he would take the key, but he should hold me for the rent ; and we had considerable conversation that day. I told him I did not see how he could, as I went out in good faith. He told me he would hold me for the rent of those premises. I had the key at the time. Nothing else occurred, only I paid him the money. I figured it up and said it was $33.30, and he said it was $33.33. He may have said more than once that he would hold me for the rent. I think he said it twice."

In reference to the same transaction, Farrington testifies : " She came and tendered me the money up to that time ; I received it. She also tendered me the key ; I declined to take it, except conditionally. I said to Mrs. Thompson : ' I can't take the key unless you agree—you and your associates—to make good the rent of the unoccupied premises until I have an opportunity of renting them.' I said I would expect to hold them for the rent while the house was unoccupied. She replied to that that she had not means to pay it, and that the other parties would have to pay it. I took the key on those conditions."

Upon this testimony—and there is nothing in the case in the least conflicting with it—the district court was right in assuming, as a fact uncontroverted upon the evidence, that the landlord had no intention of accepting a surrender

and terminating the tenancy at that time. He received the key only conditionally, and with the express declaration that he should still continue to hold the lessees for the rent, upon the covenant in their lease. There can be no pretence, then, of any surrender by virtue of any agreement, as this necessarily implies an intentional and express assent on the part of the lessor to the termination of the lease. Neither can any surrender by operation of law be predicated upon these facts. That, as said by Parke, B., in *Lyon* v. *Reed*, 13 M. & W. 285, 306, can only take place "where the owner of a particular estate has been a party to some act, the validity of which he is by law afterwards estopped from disputing, and which would not be valid if his particular estate had continued to exist." Such would be the case of a lessor taking unqualified possession of demised premises, and dealing with them in a way wholly inconsistent with the continuance of an already existing and unexpired term. In such a case, as against the lessor, the law, upon the principle of estoppel, implies a mutual agreement between him and his lessee, whereby the possession of the premises has been abandoned by the latter, and resumed by the former, in pursuance of such agreement.

The act of the plaintiff in the case at bar in receiving the key, subject to the condition stated as to the continued payment of rent, was not of this character. It distinctly recognizes the continued existence of the term, and is in no way inconsistent with it. If it be conceded that the renting to Lewis, on April 1st, was of that character, there was no surrender by operation of law, on account of that act, until that time, and plaintiff would be entitled to his rent, under the lease until that time.

Order affirmed.