JAMES R. DAYTON *v.* ANDREW CRAIK and others.

June 27, 1879.

**Amendment of Certificate of Case, after Appeal taken.**—A motion for a new trial was made, heard and denied in the trial court, upon an engrossed case settled and certified, but not stated to contain all the evidence received upon the trial. Subsequently, and after an appeal from such denial to this court, the trial judge, without notice to plaintiff, made, and caused to be attached, *nunc pro tunc*, to the engrossed case, a certificate stating that such case "contains all the evidence offered, and all proceedings had upon the trial." *Held*, that the certificate is entirely unauthorized, and upon plaintiff's motion it is stricken from the record.

**Lease—Surrender—Estoppel.**—As applied to a lease, a surrender is the yielding up of an estate for life or years to him that has the immediate reversion or remainder, wherein the particular estate becomes extinct by a mutual agreement between the parties. It may be effected by express words evincing such agreement, or may be implied from conduct of the parties going to show that they have both agreed to consider the surrender as made. The agreement may be, and sometimes is, implied upon the principle of estoppel. Upon the application of these rules, the facts of this case are *held* not to establish a surrender.

By indenture of lease the plaintiff demised to the defendants a store in the city of Minneapolis, for a term of one year, expiring October 1, 1875, and for a second term of one year, expiring October 1, 1876, at the yearly rent of $525, payable in monthly instalments in advance. The defendants, after the expiration of the second term, continued to occupy the premises, paying rent therefor as before, until April 1, 1877. On April 6, 1877, they vacated the premises. This action was brought in 1878, in the municipal court for Minneapolis, to recover the unpaid balance of rent for the year ending October 1, 1877, at the rate reserved in the original lease, and was tried by the court without a jury, and judgment ordered for plaintiff for the amount demanded in the complaint. A new trial was refused, and the defendants appealed. The facts found by the court, in addition to those above stated, are set forth in the opinion.

*Woods & Babcock,* for appellants, on the point that the facts found by the court worked a surrender by operation of law, cited 1 Wash. Real Prop. c. 10, § 7; *Bedford* v. *Terhune,* 30 N. Y. 453; *Stanley* v. *Koehler,* 1 Hilton, 354; *Hegeman* v. *McArthur,* 1 E. D. Smith, 147; *Curtis* v. *Miller,* 17 Barb. 477; *Hill* v. *Robinson,* 23 Mich. 24.

*Benton & Benton,* for respondent.

BERRY, J. This is an appeal from an order denying a motion for a new trial. The motion was made, heard and denied below upon an engrossed case, settled and certified, but not stated to contain all the evidence received upon the trial. The motion was denied November 12, 1878. On February 19, 1879, after the present appeal to this court, the judge who tried the action below made, and caused to be attached, *nunc pro tunc,* to the engrossed case, a certificate stating that such case "contains all the evidence offered, and all proceedings had upon the trial." This certificate was made without notice to the plaintiff. If this certificate is permitted to stand, the case settled becomes a thing entirely different from the case as originally settled at the hearing, of which the plaintiff had notice, and at which he had an opportunity to make such suggestions as he saw fit. It is no longer the case upon which the motion for a new trial was made, heard and denied, and which the appeal from that denial properly brings before this court. It is an *ex-parte* case, made by the judge and the defendants. The certificate is entirely unauthorized, and the plaintiff's motion to strike it from the record is accordingly granted. As the return, when purged of this certificate, does not purport to contain all the testimony received below, we cannot inquire whether the findings of fact are justified by the evidence.

The only question remaining is that principally discussed by the defendants' counsel, viz., whether the facts found make out a surrender of the lease involved in this case. The court below has found that defendants' tenancy was one from year to year, the year involved in this case commencing

October 1, 1876. As to the correctness of this finding, there appears to be no controversy between counsel. The court further finds that, about March 6, 1877, the defendants gave to plaintiff verbal notice that they would vacate the leased premises April 1, 1877; that during March, 1877, after such notice, plaintiff took several parties into the premises, offered to rent them, and asked defendants, if they were going to move out, if they could not move out by the fifteenth of March, as well as to wait until the first of April; that on April 6, 1877, defendants moved all of their effects out of the premises, except some oats and a safe, which remained there until April 10, when defendants took them away; that at the time defendants vacated the premises, plaintiff told them he should look to them for rent for the rest of the term; that after the defendants had moved everything out except the oats and safe, plaintiff called on them for rent, and in answer to defendants' inquiry how much he was going to charge them for leaving their oats in there, plaintiff said he should charge the same as before; that defendants said they would not pay it, but claimed damages for injury to their grain by water, and proposed that such damages should offset the rent, and that plaintiff then told them they must take their oats out, or he would hire a man to shovel them into the alley. Under the lease the rent was payable monthly in advance. No part of the rent for April, 1877, or for the subsequent months of the term, has been paid. Upon these facts, the court below, being of opinion that no surrender of the lease was made out, ordered judgment for the plaintiff for six months' rent and interest.

Our statute of frauds, in Gen. St. *c.* 41, § 10, provides that "no estate or interest in lands, other than leases for a term not exceeding one year, * * * shall hereafter be * * * * * surrendered * * unless by act or operation of law, or by deed or conveyance in writing." This statute has no application to the case at bar, because the lease here involved was for a term not exceeding a year.

The inquiry, then, whether the facts found by the trial court make out a surrender, is to be determined without reference to the statute, and upon general principles of law. "A surrender is the yielding-up of an estate for life, or for years, to him that has the immediate reversion or remainder, wherein the particular estate becomes extinct by a mutual agreement between the parties." Taylor's Landlord & Tenant, § 507. It may be effected by express words evincing such agreement, or may be implied from conduct of the parties going to show that they have both agreed to consider the surrender as made. Id.; *Bedford* v. *Terhune*, 30 N. Y. 453; 1 Wash. Real Prop. 354. Such mutual agreement may sometimes be implied upon the principle of estoppel, as suggested in *Nelson* v. *Thompson*, 23 Minn. 508.

We are unable to discover anything in the facts found showing any yielding up of their leasehold estate by defendants to plaintiff, under any mutual agreement for the extinction thereof. The defendants gave notice that they would leave the leased premises on April 1st, but it does not appear that the plaintiff agreed to this, nor consented that the lease might terminate on that day. Moreover, the defendants did not leave for several days after April 1st. Plaintiff asked defendants to leave on the 15th of March, but the defendants did not agree to this. The finding that the plaintiff offered to rent the premises while defendants were in possession, is too indefinite to be of any importance. It does not appear from what time he offered to rent them, whether before or after the expiration of defendants' lease; and for aught that appears to the contrary, he may have offered to lease them from April 1st, if the defendants would then leave the premises, as they did not. Indeed, as it does not appear that he did in fact rent them, his mere naked offer to do so is of very little, if any, significance upon the question of surrender. The plaintiff's threat to have defendants' oats upon the leased premises shovelled out into the alley is equally indecisive upon the question of surrender, unless it appears, as it does

not, that it was in effect an assent on the part of the plaintiff to an extinction of defendants' leasehold estate. The threat is still less significant when we consider that it was not carried out, and that it was made while defendants were still in possession, and at the very time when the plaintiff was insisting on the defendants paying the rent according to the lease. Add to these considerations the fact that at the time when defendants in fact vacated the premises, the plaintiff told them that he should look to them for the rent for the rest of the term, and it seems to us that while the case discloses some loose talk in reference to a surrender of the premises, it does not at all appear that any mutual agreement for a surrender of the leasehold estate was ever settled upon or consummated.

Neither do the facts show that plaintiff has done, or refrained from doing, anything by which he has estopped himself from insisting that the lease remained in full force, and that the defendants' leasehold estate and term continued until the expiration of the year contemplated by the lease.

We are, therefore, of opinion that the court below was right in its conclusion that there had been no surrender of the leasehold estate. The order denying a new trial is, therefore, affirmed.