## DANIEL S. STERN *vs.* FRANK THAYER.

Argued by appellant, submitted on brief by respondent, Nov. 22, 1893. Affirmed Jan. 2, 1894.

56    93
57   383

No. 8490.

**Surrender of lease by operation of law.**

Acts on the part of a tenant indicative of an intent to abandon leased premises, and on the part of a landlord to resume possession, must, to bind the parties, and to amount to a surrender by operation of law, be notorious, and sufficient to operate by way of estoppel.

**Evidence considered not to warrant finding an acceptance of the offer to surrender.**

*Held,* in this action, which was brought to recover rent alleged to be due upon a written lease for a period of three years, that, in view of certain conditions in the lease, the evidence introduced by defendant to establish a surrender by operation of law would not have warranted a verdict in his favor.

Appeal by defendant, Frank Thayer, from an order of the District Court of Blue Earth County, *M. J. Severance,* J., made April 13, 1893, denying his motion for a new trial.

On December 1, 1890, the plaintiff, Daniel S. Stern, leased to defendant, an architect, two rooms on the second floor of his building in Mankato for three years for $20 a month, the rent payable monthly in advance. Thayer covenanted not to assign the lease or sublet the premises without the written consent of Stern. In case the rooms were abandoned or vacated and so remained for fifteen days, Stern was empowered to relet at his discretion and apply upon the rent any money received. Thayer entered and occupied the rooms and paid rent sixteen months to April 1, 1892 and then abandoned them and notified Henry E. Hance, plaintiff's agent and sent him the key. Hance was absent and the bearer left it in his office. This action was commenced October 15, 1892, to recover seven months rent falling due prior to that time. Thayer answered that he surrendered the premises on March 31, 1892, and that Stern accepted the same and had since had the possession thereof. The issues were tried December 23, 1892. When the evidence was all in, the Judge, referring to 1878 G. S. ch. 41, § 10, directed the jury to return a verdict for

the plaintiff for $140 and interest, $4.57, and it was done.   Defendant moved for a new trial and being denied appealed.

*Pfau & Young,* for appellant.

There was evidence tending to prove an implied surrender of the term or a surrender by operation of law.   At least, there was evidence adduced from which different minds might reasonably draw different conclusions.   Possibly, had the case been submitted, the jury would have found against the defendant, and, the jury having so found, the Court should have refused to disturb the verdict.   A surrender by operation of law takes place where the parties, without any writing or express words, do acts which imply that they have both considered the surrender as made.   Taylor, Landl. & Ten. (5th Ed.) § 507; *Lyon* v. *Reed,* 13 M. & W. 285; *Nelson* v. *Thompson,* 23 Minn. 508.

The delivery of the key of the leased premises by the tenant to the lessor and a change of possession, under one set of circumstances might be considered as a surrender, while under different circumstances a different conclusion might be drawn.   One jury might conclude that the delivery of the key and change of possession implied surrender, while another jury considering the same state of facts might honestly infer that such acts did not amount to a surrender. Hence, the facts in this case should have been submitted to the jury. *Witman* v. *Watry,* 31 Wis. 639; Washburn, Real Property (3rd Ed.) ch. 10, § 7, par. 6; *Wheeler* v. *Walden,* 17 Neb. 122; *Bedford* v. *Terhune,* 30 N. Y. 453; *Schieffelin* v. *Carpenter,* 15 Wend. 400; *Talbot* v. *Whipple,* 14 Allen 177; *Nelson* v. *Thompson,* 23 Minn. 508; *Dayton* v. *Craik,* 26 Minn. 133; *Smith* v. *Pendergast,* 26 Minn. 318; *Buffalo County Nat. Bank* v. *Hanson,* 34 Neb. 455.

*Loren Cray,* for respondent.

The surrender of a lease, being a surrender of an estate or interest in lands, it is by statute declared void unless in writing and signed. 1878 G. S. ch. 41, § 10.   *Bailey* v. *Wells,* 8 Wis. 141.

But defendant claims that there was a surrender of the lease by operation of law.   It is not competent to establish an oral surrender of this lease, and it is improper to consider any conversations between

the parties to the lease as evidence tending to prove a surrender thereof. Such conversations are only admissible to characterize acts of the parties which may tend to effect a surrender by operation of law. Where the acts might be misconstrued, were it not for the conversations, oral evidence is admissible to explain those acts. *Schieffelin* v. *Carpenter*, 15 Wend. 140; *Rowan* v. *Lytle*, 11 Wend. 617; *Coe* v. *Hobbey*, 72 N. Y. 141.

Under the statute Hance's authority should be in writing, and it is a violation of this statute to allow proof of the acts and statements of an agent in a matter involving a lease of this kind, who does not appear to have been authorized in writing.

There was no consent that defendant vacate; there was no acceptance of the keys, they were forced upon Hance, he must retain them or throw them away; he did not re-rent the premises, though he had a right so to do. He demanded his rent and it was refused. He has exercised no control over the premises, save such as the contract of lease provided for. If the case had gone to the jury, and the jury had found the lease terminated by operation of law, the Court should have set aside the verdict. *Lucy* v. *Wilkins*, 33 Minn. 441; *Nelson* v. *Thompson*, 23 Minn. 511; *Dayton* v. *Craik*, 26 Minn. 133; *Finch* v. *Moore*, 50 Minn. 116; *Scott* v. *Beacher*, 91 Mich. 590.

COLLINS, J. In 1890 these parties entered into a written contract, whereby plaintiff demised and leased to defendant certain office rooms for a period of three years. The latter took possession and occupied the premises until March 31, 1892, when he vacated. This action was brought to recover for rent subsequently accruing under the lease, and at the conclusion of the trial a verdict was ordered and rendered for plaintiff.

By the terms of the lease the lessee was prohibited from assigning the same, and from letting or subletting any part of the premises; and, should the rooms be vacated and remain unoccupied for fifteen days consecutively, he requested and authorized the lessor to re-enter, and to re-rent them, applying the moneys received towards the rent accruing under the lease. These conditions must be kept in mind when considering the testimony upon which the trial court acted when directing a verdict; and, as the lease was in writing, necessarily, and created an interest in lands for a period exceeding one

year, it could only be surrendered by a written instrument executed with the formalities attendant upon the execution of the lease, or by operation of law. 1878, G. S ch. 41, § 11. There was no attempt to show a written surrender, so the only question before us, assuming, as we do, that there was proof of Hance's agency, is, was .there evidence introduced in defendant's behalf tending to prove a surrender by operation of law, which can only take place where the owner of a particular estate has been a party to some act, the validity of which he is by law afterwards estopped from disputing, and which would not be valid if his particular estate had continued? *Smith* v. *Pendergast*, 2ᴜ Minn. 318, (3 N. W. 978,) and cases cited. As will be seen by this definition a surrender by operation of law can only be built up by invoking and relying on the doctrine of estoppel. The effect of a surrender of this character is to terminate the relation of landlord and tenant, and with it all of the obligations of the parties to that relation. When there arises a condition of facts, voluntarily assumed, incompatible with the existence of the relation of landlord and tenant between parties who have occupied that relation, there is a surrender of the lease by operation of law. *Bowen* v. *Haskell*, 53 Minn. 480, (55 N. W. 629.) Any acts which are equivalent to an agreement on the part of a tenant to abandon and on the part of a landlord to resume possession of demised premises amount to a surrender of a term by operation of law. *Talbot* v. *Whipple*, 14 Allen, 177. In that case the tenant left the premises with a manifest intent to abandon, and the landlord took possession with the manifest design of accepting the abandonment. All such acts, however, as bind the parties to a surrender of this character must operate by way of estoppel, and must be acts of notoriety. *Lyon* v. *Reed*, 13 Mees. & W. 285. For illustration as to what acts may be sufficient, we have the case of a lessor taking unqualified possession of demised premises, and dealing with them in a way wholly inconsistent with the continuance of an already existing and unexpired term. *Nelson* v. *Thompson*, 23 Minn. 508. See, also, *Dayton* v. *Cruik*, 26 Minn. 133, (1 N. W. 813;) *Smith* v. *Pendergast, supra.* And for further illustration and application of the rule to acts, see 2 Tayl. Landl. & Ten. (8th Ed.) ch. 11, § 5; Wood, Landl. & Ten. § 496 *et. seq.*, and cases cited in notes, particularly *Amory* v..

*Kannoffsky,* 117 Mass. 351; *Witman* v. *Watry,* 31 Wis. 639; *Coe* v. *Hobby,* 72 N. Y. 141; *Hegeman* v. *McArthur,* 1 E. D. Smith, 147; *Auer* v. *Penn,* 99 Pa. St. 370; *Dodd* v. *Acklom,* 6 Man. & G. 672. The three last referred to are cases in which the effect of delivery of keys by the tenant and their retention by the landlord is discussed.

From the authorities, and upon principle, if the statute is not to be a dead letter, it seems that at least there must be some unequivocal act on the part of the landlord, which unmistakably evinces an intention on his part to terminate the lease, and the relationship of landlord and tenant. The proof is insufficient if there be no evidence of acts which will bind upon the principle of estoppel. This brings us to an examination of the evidence in the case upon this question. Construing it most favorably to defendant, it appears that some days prior to March 20th he had conversed with Hance, the agent, about preparing an office for himself in his own building. This was evidently mere desultory conversation of no importance. About March 20th Hance was in the leased rooms, collecting rent, and defendant told him that he was going to vacate the rooms, and would get a good tenant to occupy them when he moved out. Hance objected to defendant's securing a tenant; told him not to do it; stated that he had a scheme for renting the rooms himself, and for that reason he did not want defendant to secure a tenant. Nothing more was said of consequence, and on the day of defendant's removal he caused the key of the rooms to be left at Mr. Hance's place of business. It afterwards came into possession of the latter; just when does not appear. Some time in March one Dr. James went to Hance, told him that he understood defendant was going to move out, and asked if the rooms could be rented. The latter replied that he did not know; · that another party, who wanted two additional rooms, would take them, he expected. Later Hance informed James that the party referred to had failed to take the rooms, and that they were for rent. About April 15th the doctor procured the key from Hance, examined the premises, but did not rent. It was not shown that defendant was advised of any of this conversation between Dr. James and Hance, and therefore it did not influence or determine his actions. In these conversations Hance informed the doctor that defendant held a lease of the prem-

.ises, and some time in the month of April the former demanded of the latter payment of the rent for the month of April, under the lease. About June 1st, signs, "Rooms to Rent," appeared in the window.

Now, in all that was said or done by Hance we fail to see any of the essential elements of an estoppel. None of the acts were equivalent to an agreement on the part of the tenant to abandon, and the landlord to resume possession of, the premises. If we are to judge Hance's intentions by what he said and did, it is obvious that he proposed to abide by the conditions of the lease, and retain ,and continue the relations thereby created. It will be noticed that defendant did not introduce the subject of vacating the rooms —about March 20th—for the purpose of learning what Hance might think of it, or consent to, but he informed the latter that he was going to vacate. It is evident that his mind was then made up, and that the conversation which then took place did not influence it in the least. Again, under the terms of the lease, Hance was justified in declining the defendant's proposition to secure another tenant. Not only was defendant prohibited from assigning or subletting, from securing another tenant in his stead, but he had expressly requested and authorized his landlord to do this very thing should he vacate, and should the rooms remain unoccupied for fifteen days. This conversation, and all that was said and done, must be considered in connection with the conditions of the lease; and it will be seen that not a word was said by either defendant or Hance, and not an act was performed, inconsistent with these terms. The landlord had a right to refuse to permit defendant to select a tenant. He had a right to devise any scheme or plan to rent the rooms should they become vacant, and everything that he did with Dr. James was in strict accordance with, and under the conditions found in, the lease. He even advised the latter that defendant held the lease, and he promptly attempted to collect the rent from his tenant. That he kept the key when it came to his possession, after defendant moved out, might have had significance in connection with other circumstances tending to show that the landlord had manifested an intention to resume possession without reference to the condition in the lease by which he was requested and authorized so to do, but it has no significance here. There was no

room for doubt as to the legal effect of the proofs, and a verdict for defendant could not have been sustained.

Order affirmed.

(Opinion published 57 N. W. Rep. 329.)