BUCKINGHAM APARTMENT HOUSE COMPANY v. ALLAN H. DAFOE.

December 7, 1899.

Nos. 11,764—(133).

Landlord and Tenant—Surrender of Premises—Evidence.

> In an action to recover rent, it is *held* that the undisputed evidence was such as to require, as a matter of law, a finding to the effect that the defendant surrendered the demised premises, and that the plaintiff accepted them and resumed possession thereof.

Action in the municipal court of St. Paul to recover $130 on a written lease. The case was tried before Hine, J., who found in favor of plaintiff for the amount demanded; and from an order denying a motion for a new trial, defendant appealed. Reversed.

*Charles H. Taylor,* for appellant.

*William G. White,* for respondent.

START, C. J.

The complaint alleges that the parties hereto made a written lease whereby the plaintiff leased one of its flats in its apartment house known as the "Buckingham" to the defendant for the term of 14 months from July 1, 1896, for the stipulated rent of $32.50 a month; that the defendant paid the rent to April 15, 1897, but there is still due from him as unpaid rent the sum of $130. The defendant by his answer denied the execution of the lease, but admitted and alleged that he entered into possession of the premises July 1, 1896, as a tenant at will, and continued to occupy the same and to pay rent therefor at the rate of $32.50 a month until May 1, 1897, at which time he vacated and surrendered up the premises to the plaintiff, who accepted them.

On the trial the plaintiff offered in evidence a written lease of the premises for 14 months, purporting to have been executed on its behalf by an agent; but, as it did not appear that the agent was authorized in writing to execute the lease, it was excluded by the trial court on the ground that it was within the statute of frauds and void. The court found as a fact that the defendant entered into the possession of the premises on July 1, 1896, and agreed to pay as

rent therefor $32.50 per month on the first day of each month in advance; that on May 2, 1897, he vacated the premises, but he never gave any notice of the termination of his tenancy; and, further, that there was never any surrender of the premises by the defendant, and an acceptance thereof by the plaintiff. As a conclusion of law, the court ordered judgment for the plaintiff for the amount claimed. The defendant appealed from an order denying his motion for a new trial.

The defendant's first contention is that the plaintiff's cause of action was not based upon any liability of the defendant as a tenant at will or from month to month, but upon an express contract and lease for the term of 14 months, and that, when it appeared that such lease was void, the plaintiff could not recover upon the tenancy admitted in the answer. The law, as declared by the decisions of this court, seems to be otherwise. Finch v. Moore, 50 Minn. 116, 52 N. W. 384; Prendergast v. Searle, 74 Minn. 333, 77 N. W. 231.

The second claim of the defendant is that the evidence as to a surrender of the premises and an acceptance thereof by the plaintiff is undisputed and conclusive in his favor. Any acts which are equivalent to an agreement, express or implied, on the part of the tenant and of the landlord, that the former surrenders and the latter resumes the demised premises, constitute a surrender. Dayton v. Craik, 26 Minn. 133, 1 N. W. 813. We are of the opinion that the undisputed evidence shows a surrender of the premises, within the rule stated.

The defendant claims a surrender of the premises to the manager of the building, Mr. Moore, but the plaintiff claims that it was not shown that he was the agent of the plaintiff for any purpose. The evidence shows that the National Investment Company, a corporation, had the management of the apartment house of which the flat in question was a part, by virtue of a written contract between it and the plaintiff, but the evidence does not show the terms of the contract. The undisputed evidence, however, is to the effect that the investment company placed Moore in direct charge of the building as its agent, and as such he had an office therein; that, acting under its directions, he had charge of all of the apartments and

flats in the building, and was the only person appointed by the investment company to look after them; that he made leases for them, collected the rents, gave receipts therefor, and paid the money over to the investment company; and that, when apartments were vacated or surrendered, he would re-rent them. He also received the keys from outgoing tenants, and did all that was necessary to be done in conducting the business in the building, under general authority from the investment company. There was no evidence on the part of the plaintiff or otherwise tending to show that Moore was not authorized to do on its behalf just what he did do, or that it had no knowledge as to his acts. If the investment company was not authorized thus to place Moore in the charge and management of the building, and so to rent the flats and apartments therein for and on behalf of the plaintiff, it was a fact peculiarly within its own knowledge; yet it was silent on the trial. A principal is bound by the acts of his agent which are within the apparent authority which he holds the agent out to the public as possessing. Tice v. Russell, 43 Minn. 66, 44 N. W. 886.

But counsel for plaintiff lays great stress on the fact that Moore was the agent, not of the plaintiff, but of the investment company, and that the authority of the latter in the premises was not shown by producing the written contract. The defendant was not a party to this contract, and it is immaterial, so far as he is concerned, what the actual authority of the investment company was, provided its acts showing a surrender of the premises were within its apparent authority. It was a corporation, and could only act by an agent; and Moore's acts were its own, and within the apparent scope of its authority, and binding upon the plaintiff.

This brings us to the question whether there was in fact a surrender of the premises to Moore, and an acceptance by him. The objections urged on behalf of the plaintiff, that this question cannot be considered by this court, because a certain receipt received in evidence is no part of the settled case, and that the certificate of the trial judge does not show that the record contains all of the evidence, have been cured by an amended return pursuant to the order of this court. The evidence shows that the defendant vacated the

premises May 1 or 2, 1897; that he had been paying rent from month to month, and that, when he left, the rent was unpaid from April 15; that he notified Moore, about two weeks before he vacated the flat, that he was going out; that, on the day he left, Moore was not in the building, and on May 18 the defendant returned, found Moore in the building, paid him a half month's rent, $16.25, and took his receipt therefor as the agent of the investment company, which specified that it was for the rent of the flat from April 15 to April 30, 1897; that the rent for the extra day or two in May was settled by the defendant leaving a Yale lock which he had put on the door of the flat. The evidence further shows that the keys of the flat were then turned over to Moore, who accepted and retained them without objections or conditions; that he tried to re-rent the flat as soon as he received the keys, and had applications therefor, but he did not succeed in so doing while he remained in charge of the building, which was until September 1, 1897; and, further, that no demand was ever made upon the defendant for further rent until after there was a change of managers of the building. All of this evidence was uncontradicted, except that, on the question whether Moore made any claim upon the defendant for further rent, he testified as follows:

"Q. Where did you say you were when Mr. Dafoe surrendered up the keys? A. At the Buckingham. Q. Did you ever make any demand on Mr. Dafoe for the rent of those premises after that time? A. I think I sent him a bill. Q. When? A. At the first of each month. Q. Are you sure about that? A. I can't say positively. Q. Isn't it a matter of fact that you never did, as long as you remained manager, or afterwards? A. I can't say one way or the other. I am not clear on that point."

Other than this, the evidence is undisputed, and no claim can be made that it is not entirely credible. Upon the whole record, it is clear that the evidence is not simply sufficient to have justified a finding in favor of the defendant upon this question of the surrender and acceptance of the demised premises, but that it required such a finding as a matter of law.

Order reversed, and a new trial granted.