Thomas M. SNORTLAND, Plaintiff
and Appellee,

v.

Raymond L. LARSON, Defendant
and Appellant.

Civ. No. 10680.

Supreme Court of North Dakota.

March 13, 1985.

Solberg, Stewart, Boulger & Miller, Fargo, for plaintiff and appellee; argued by Garylle B. Stewart, Fargo.

Kennelly & Pederson, Fargo, for defendant and appellant; argued by Timothy J. Pederson, Fargo.

ERICKSTAD, Chief Justice.

This is an appeal by the defendant, Raymond L. Larson, from an order of the district court denying his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. Judgment upon a special jury verdict and the court's findings of fact, conclusions of law, and order for judgment was entered in favor of the plaintiff, Thomas M. Snortland, and against Larson in the amount of $125,600 plus costs, disbursements, and interest, for damages resulting from Larson's failure to comply with provisions of the parties' written lease. We affirm.

Snortland and Larson, both residents of North Dakota, entered into a written lease on October 2, 1981, wherein it was agreed that Snortland would lease to Larson for agricultural purposes 1,560 acres of farmland located in Kittson County, Minnesota, for the 1982 and 1983 farming seasons. The lease required Larson to pay an annual cash rent of $80 per acre. One-half was to be paid on or before April 1, and the remaining one-half was to be paid on or before November 1 of each year of the lease.

The parties agree that in late February or early March 1982, Larson abandoned the leased real property by informing Snortland that he would be unable to farm the land and would not be making the first payment due April 1, 1982. Subsequently, Snortland advertised the property for rent and on April 28, 1982, entered into a two-year written lease of the same 1,560 acres of farmland with a third party at a cash

rental of $62,000 per year, or $62,800 less per year than under the lease with Larson, with an option to cash rent the farmland for an additional year in 1984. By service of summons and complaint dated July 30, 1982, Snortland brought suit against Larson for rent allegedly due under their lease, reduced by amounts received in mitigation of damages.

At trial Snortland testified that it had not been his intention to release Larson from his obligations under the lease. He explained, "I needed someone to farm the land. I couldn't let the land go to weeds." A registered letter postmarked April 8, 1982, correctly addressed to Larson and signed by Snortland, but returned unclaimed and unopened, was admitted into evidence. It reads, in pertinent part, as follows:

> "Your breach of the agreement is obvious and requires me to take steps to mitigate my damage.
>
> "I have advertised the property for cash rent on a two-year basis. The highest cash rent proposal is $40.00 per acre. I will be renting the property on this basis and will be looking to you for the deficiency between said cash rent and the cash rent agreed by you in the October 2, 1981, [lease]."

Snortland testified that he showed Larson a copy of the letter at a meeting between the parties on April 19, 1982, and that Larson refused to acknowledge receipt of the copy.

To resolve the issues presented at trial, the district court submitted to counsel a four-question special verdict form, with accompanying instructions applying Minnesota law, which it proposed to give to the jury. Larson's attorney requested that an additional question be asked of the jury, namely, "whether or not a provision for reentry occurs in the lease and if not, then it would be our contention that that automatically works the cancellation [of the lease]." The court denied the request. The jury found it necessary to answer only two of the special verdict questions:

"*Question No. 1:* Did the Plaintiff Thomas M. Snortland by his acts, conduct, words and intention cancel the farm lease in its entirety and thus release the Defendant Raymond L. Larson from any liability on said lease?

Answer: Yes___ No _X_ "

"*Question No. 2:* Did the Plaintiff accept the abandonment of the premises by the Defendant?

Answer: Yes___ No _X_ "

Based upon the jury's findings, the court concluded that Larson was in breach of the parties' lease.

The sole issue raised by Larson is whether or not the district court erred in failing to conclude, as a matter of Minnesota law, that Snortland's reletting of the farmland, in the absence of a right-of-reentry clause in the lease, constituted an acceptance by Snortland of Larson's abandonment of the leased property by operation of law, thereby terminating the lease and Larson's obligation to pay rent.

The parties have determined that Minnesota law governs their lease and the resolution of this case. As Section 9–07–11, N.D. C.C., was repealed by S.L. 1973, ch. 77, § 1, it appears that our decisions applying that statute may no longer be of precedential value. *See First National Bank of Wibaux v. Dreher*, 202 N.W.2d 670 (N.D. 1972); *Bjerken v. Ames Sand and Gravel Company*, 189 N.W.2d 366 (N.D.1971); *Nordenstrom v. Swedberg*, 143 N.W.2d 848 (N.D.1966). Those decisions required that a contract be interpreted according to the law and usage of the place where it was to be performed, or if it did not indicate a place of performance, according to the law and usage of the place where it was made.

In *Issendorf v. Olson*, 194 N.W.2d 750 (N.D.1972), this Court adopted a "significant contacts" rule to be applied in tort litigation when the wrong complained of occurred in a foreign state. Probably a majority of American courts today undertake to follow, in contract cases, some variation of a "most significant relationship to the transaction and parties" approach in the absence of a choice-of-law clause in the

contract in issue. R. Leflar, *American Conflicts Law*, Ch. 14, § 149 (1977); R. Weintraub, *Commentary on the Conflict of Laws*, Ch. 7, p. 275 (1971). *See* Restatement (Second) of Conflict of Laws §§ 187, 188 (1971). However, because the parties have chosen Minnesota as the state of the applicable law, we need not decide that issue today and accordingly will apply the substantive law of Minnesota to this case.

The Supreme Court of Minnesota, in *Gruman v. Investors Diversified Services*, 247 Minn. 502, 78 N.W.2d 377, 380 (1956), stated, as a reason in support of the rule— where a lease contains a clause prohibiting the assignment or the subletting of the leased premises without the consent of the lessor, the lessor has no obligation to look to anyone but the lessee for performance and need not mitigate the loss when the lessee abandons—that

"a lessee's unilateral action in abandoning leased premises, *unless accepted by his lessor*, does not terminate the lease or forfeit the estate conveyed thereby, nor the lessee's right to use and possess the leased premises and, by the same token, his obligation to pay the rent due therefor. *Haycock v. Johnston*, 81 Minn. 49, 83 N.W. 494, 1118; *Id.*, 97 Minn. 289, 106 N.W. 304." [Emphasis in original.]

*Accord Markoe v. Naiditch and Sons*, 303 Minn. 6, 226 N.W.2d 289, 290 (1975).

Minnesota's Statute of Frauds, Minn. Stat. § 513.04 (1984), reads in part: "No estate or interest in lands, other than leases for a term not exceeding one year, ... shall hereafter be ... surrendered ... unless by act or operation of law, or by deed or conveyance in writing, ...." It appears to be well-settled law in Minnesota that a surrender by operation of law can only take place where the owner of a particular estate has been a party to some act, the validity of which he is by law afterwards estopped from disputing, and which would not be valid if his particular estate had continued to exist. *E.g., Bowman v. Plumb*, 220 Minn. 547, 20 N.W.2d 493, 494 (1945); *Hildebrandt v. Newell*, 199 Minn. 319, 272 N.W. 257, 259 (1937); *Stern v. Thayer*, 56 Minn. 93, 57 N.W. 329 (1894); *Nelson v. Thompson*, 23 Minn. 508, 512 (1877).

In *Stern v. Thayer*, the Minnesota court discussed further the above definition of surrender by operation of law:

"As will be seen by this definition a surrender by operation of law can only be built up by invoking and relying on the doctrine of estoppel. The effect of a surrender of this character is to terminate the relation of landlord and tenant, and with it all of the obligations of the parties to that relation. When there arises a condition of facts, voluntarily assumed, incompatible with the existence of the relation of landlord and tenant between parties who have occupied that relation, there is a surrender of the lease by operation of law.... Any acts which are equivalent to an agreement on the part of a tenant to abandon and on the part of a landlord to resume possession of demised premises amount to a surrender of a term by operation of law.... *"[T]here must be some unequivocal act on the part of the landlord, which unmistakably evinces an intention on his part to terminate the lease, and the relationship of landlord and tenant."* 57 N.W. at 329–30. [Citations omitted; emphasis added.]

There is no provision in the parties' lease reserving in Snortland a right of reentry for the breach by Larson of the covenant to pay rent. Larson contends that under Minnesota law, in the absence of a right-of-reentry clause, a landlord may not, without terminating the lease, reenter and relet the leased premises after non-payment of rent by the tenant, citing *Woodcock v. Carlson*, 41 Minn. 542, 43 N.W. 479 (1889), and *State v. Brown*, 203 Minn. 505, 282 N.W. 136 (1938).

In *Woodcock*, the court, in discussing the rights of the parties to a lease which did not reserve to the landlord the right of reentry for non-payment of rent, said:

"[T]he right to re-enter for non-payment of rent is not incident to the estate of the

lessor at common law, but must be reserved in the lease. Unless a lease contained an express provision to that effect, a default in the covenant to pay rent would not work a forfeiture of the lease, or give the landlord the right to re-enter; but he was put to his remedy by distress or action to collect his rent. Hence the custom to insert in every well-drawn lease a clause of re-entry for a breach of its covenant or conditions. Originally the method of resuming possession in such cases was by actual entry by the lessor, and eviction of the tenant without action.... This method of actual entry being in practice inconvenient and objectionable, a statutory substitute was provided, to the effect that where, in case of the failure of the tenant to pay rent, the landlord has a subsisting right to re-enter for such failure, he may bring an action to recover possession of the property, and such action is equivalent to a re-entry. Gen.St. 1878, c. 75, § 33. [*See* Minn.Stat. § 504.02 (1984).[1]] It will be observed that this statute does not assume to give a right of re-entry where such right does not already exist, according to the terms of the lease, but merely provides that where the right is already subsisting the commencement of an action shall be equivalent to an actual entry." 43 N.W. at 480. *Accord University Community Properties v. New Riverside Cafe,* 268 N.W.2d 573, 575 n. 3 (Minn.1978).

In *Brown,* the defendant-landlord was convicted of the crime of coercion because he removed the door and window of an apartment after the tenants defaulted in the payment of the weekly rent. The landlord argued that the tenancy was terminated and that under such circumstances he had the common law right to enter after the expiration of the tenancy and did not need to resort to unlawful detainer proceedings. *See* Minn.Stat., ch. 566 (1984).[2] The Minnesota court, in concluding that the tenancy was never terminated and that the tenant was in lawful possession of the premises at the time the landlord attempted to retake possession, said: "[T]he landlord cannot retake possession of the premises when the tenant defaults [in making rent payments] unless he reserves the right [of reentry]." 282 N.W. at 137.

In this case, however, Larson not only defaulted in his obligation to pay rent; he also abandoned the leased farmland. Larson points out that, contrary to North Dakota law [*see Wallwork Lease and Rental Co., Inc. v. JNJ Investments, Inc.,* 303 N.W.2d 545, 547 (N.D.1981); *MAR–SON, Inc. v. Terwaho Enterprises, Inc.,* 259 N.W.2d 289, 291 (N.D.1977)], landlords are under no obligation in Minnesota to mitigate damages after a tenant abandons leased premises. *Markoe v. Naiditch and Sons,* 226 N.W.2d at 291; *Control Data Corporation v. Metro Office Parks Company,* 296 Minn. 302, 208 N.W.2d 738, 740 (1973); *Gruman v. Investors Diversified Services,* 78 N.W.2d at 381. Thus, the landlord is under no obligation to lease the abandoned property to another, and may let the premises lie idle and collect the rent as it accrues.

Apparently to be distinguished are decisions of the Minnesota court which have held that a landlord has a duty to mitigate his loss if he reenters and terminates the lease pursuant to a reserved right of reentry which works a non-forfeiture of rents.

1. Minn.Stat. § 504.02 reads in pertinent part as follows:

    "In case of a lease of real property, *when the landlord has a subsisting right of reentry for the failure of the tenant to pay rent* he may bring an action to recover possession of the property and such action is equivalent to a demand for the rent and a reentry upon the property; ...." [Emphasis added.]

2. Minn.Stat. § 566.03, subd. 1, sets forth the elements of an action to recover possession of leased premises and reads in pertinent part as follows:

    "When any person holds over lands or tenements ... contrary to the conditions or covenants of the lease or agreement under which he holds, or after any rent becomes due according to the terms of such lease or agreement ... the person entitled to the premises may recover possession thereof in the manner hereinafter provided."

*Gruman,* 78 N.W.2d at 381. *See, e.g., Newberg v. Conley,* 190 Minn. 459, 252 N.W.´221 (1934); *Guthrie v. Hagen,* 162 Minn. 447, 203 N.W. 216 (1925); *Galbraith v. Wood,* 124 Minn. 210, 144 N.W. 945 (1914). Illustrative is *Guthrie,* wherein the defendants-tenants of a rented farm abandoned the property after harvesting some of the crops and getting the balance ready for harvest. The lessor reentered the leased property, appropriated the unharvested crop but did not credit the defendants for the value of the crop. The lessor sued for the balance of the year's unpaid cash rent. The court, in holding that it was the lessor's duty to apply what was realized above expenses out of the crop in reduction of his claim, said:

> "Plaintiff as landlord seeks to enforce a covenant of the lease and recover the rent for the full term, although he has taken possession and appropriated crops harvested by the tenants and some ready for harvest. The lease provides that, in case of defendants' failure to fulfill any of their agreements, plaintiff may re-enter and take possession of the rented premises, and hold and enjoy the same without such re-entering working a forfeiture of the rents to be paid for the full term of the lease. Re-entry, because of abandonment by the tenant or because of his failure to perform his covenants, terminates the estate of the tenant, but the agreement to make the stipulated payment survives under the provision mentioned. However, after the leasehold is thus terminated by re-entry, there can be no right to rent, strictly speaking, but only an action for damages for failure to make the payment. *Hall v. Gould,* 13 N.Y. 127. In such a re-entry, the lessor being protected by the provision of non-forfeiture of rents, if he lets the premises for the balance of the term to another, and then sues the first tenant for the unpaid balance of the stipulated rent, the law is well settled that the rent received for the remainder of the term must be applied in reduction of the damages." 203 N.W. at 217.

It appears that in Minnesota where a lessee abandons the leased property before the end of the term, a reletting by the lessor does not of itself constitute a surrender by operation of law if there is a clause in the lease reserving such a right in the lessor. *Hilzinger v. Novak,* 172 Minn. 369, 215 N.W. 515 (1927); *Rees v. Lowy,* 57 Minn. 381, 59 N.W. 310 (1894); *Stern v. Thayer,* 57 N.W. at 330. *See* 2 Powell on Real Property, § 247[5], p. 372.165 (1984). In such a case the question whether or not the lessor has accepted a surrender of the lease or is estopped from denying such surrender is usually a question of fact to be determined by the trier of fact. *Hilzinger,* 215 N.W. at 516. In *Hilzinger,* the Minnesota court upheld the trial court's conclusion that there had been no surrender of the parties' one-year lease by agreement or operation of law. The lease contained a provision authorizing the lessor to reenter in case of the lessee's default without such reentry working a forfeiture of the rents, and a provision forbidding the assignment of the lease or the subletting of the premises without the written consent of the lessor. The lessee occupied and paid rent on the premises for only four months before transferring the property to a third party. The lessor consented to the transfer but testified "that he told defendant at the time that he would look to him for the rent under the lease." The court noted that "nothing is better settled than that a surrender is not to be implied from the mere facts that the lessor assented to the assignment of the lease, and accepted rent from the assignee." The court concluded that the trial court could find that the lessor assented to the transfer by the lessee with the understanding that the lessee remain liable for the rent, and that there had been no surrender of the lease by operation of law.

Larson contends that the Supreme Court of Minnesota on a number of occasions has ruled that a lessor's reletting of leased premises after abandonment by the lessee, in the absence of a right-of-reentry clause in the governing lease, results in an accept-

ance of such abandonment by operation of law. We will now consider those cases.

In *Haycock v. Johnston*, 81 Minn. 49, 83 N.W. 494 (1900), a case involving a lease which did not contain a right-of-reentry clause, the Minnesota court rejected the lessee's contention that the lessor should have made an effort to re-rent the leased property, a dwelling house, after the lessee had surrendered possession of it. The court said:

> "Plaintiff did not accept defendant's surrender of the property, and had no right to re-rent it. If he had accepted it back, and re-rented it to some other person, a rescission of the contract of lease would have been thereby affected, and defendant wholly released from his obligation."
> 83 N.W. at 495.

In *Haycock v. Johnston*, 97 Minn. 289, 106 N.W. 304 (1906), the Minnesota court approved the above rule citing in support thereof *Buckingham Apartment House Co. v. Dafoe*, 78 Minn. 268, 80 N.W. 974 (1899); *Stern v. Thayer*, 56 Minn. 93, 57 N.W. 329 (1894); *Bowen v. Haskell*, 53 Minn. 480, 55 N.W. 629 (1893); and *Nelson v. Thompson*, 23 Minn. 508, apparently based on the view that the new lease created a situation incompatible with the relation of landlord and tenant between the lessor and the original lessee. Under the facts of *Haycock*, where the lessor, in the absence of a right-of-reentry clause in the lease authorizing a reentry by the landlord on the breach of its terms without it working a forfeiture, "entered upon possession of the premises, *continued to occupy a small portion himself,* and rented the rest for a time, *exceeding the period of the lease,*" the court found an acceptance of the surrender of the leased premises which "operated to cancel the lease." 106 N.W. at 305. [Emphasis added.]

In another case cited by Larson, *Maze v. Minneapolis Willys-Knight Co.,* 184 Minn. 5, 237 N.W. 612 (1931), the court's syllabus sets forth the following facts and the court's holding:

> "The defendant was a tenant at will from month to month of two separate

pieces of property. It vacated them. It did not give the statutory notice. [*See* Minn.Stat. § 504.06, which requires written notice of termination of a month-to-month tenancy; *Markoe*, 226 N.W.2d at 290.] The plaintiff landlord rented one of the pieces of property after the defendant abandoned it, and the new tenant entered and occupied. It is held that there was a surrender of the property rerented from the date of the rerenting; and that the evidence does not require a finding that there was a surrender prior to that date, or that there was a surrender of the property not rerented."

There is no mention in *Maze,* whether or not the parties' lease contained a right-of-reentry clause. The court's reasoning in regard to the property re-rented follows:

> "The burden of showing a surrender was upon the defendant. When the plaintiff leased the ... property to [the new tenant] ..., after its abandonment by the defendant, there was an accepted surrender. The defendant was willing that the property be rented to another. This was not inconsistent with its claim of surrender. *We find nothing in the record justifying the view that it was understood that the plaintiff might lease to another and in so doing merely reduce damages, the defendant in the meantime remaining liable until a termination by notice or agreement.* There was a surrender of this property as a matter of law." 237 N.W. at 612. [Emphasis added.]

The fourth case referred to us by Larson is *Bowman v. Plumb*, 220 Minn. 547, 20 N.W.2d 493 (1945). *Bowman* involved an action brought to recover rent alleged to be due under the lease of a certain popcorn canteen belonging to the plaintiff and leased to the defendant. The Minnesota court upheld the trial court's findings that the plaintiff rented the property to the defendant subject to the provision that the "lease might be terminated at any time by either party thereto" and that the lease was terminated by the plaintiff when he

rented the same property to a third party. In so holding, the court said:

"A lease may be terminated by operation of law where the owner of the leased premises has been a party to some act the validity of which he is estopped from disputing. It may be thus terminated when the landlord voluntarily assumes a position incompatible with the existence of the relationship of landlord and tenant as between said landlord and the original lessee. Thus, if a landlord accepts a third party as a tenant in place of a prior lessee, in effect this constitutes an acceptance of the surrender of the leased property and a consequent termination of the prior lease by operation of law.... *Maze v. Minneapolis Willys-Knight Co.*, 184 Minn. 5, 237 N.W. 612; *Minneapolis Elec. Lamp Co. v. Federal Holding Co.*, 175 Minn. 421, 221 N.W. 645; *Millis v. Ellis*, 109 Minn. 81, 122 N.W. 1119; *Paget v. Electrical Eng. Co.*, 85 Minn. 311, 88 N.W. 844; *Haycock v. Johnston*, 81 Minn. 49, 83 N.W. 494, 1118." 20 N.W. at 494–95.

Thus, it appears that in Minnesota, at least under the facts of *Haycock*, a reletting of abandoned property, in the absence of a right-of-reentry clause, necessarily and as a matter of law brings to an end the tenancy previously existing. 4 Tiffany, The Law of Real Property, § 962, p. 26 (1975).

■ However, the facts involved in *Haycock* are not the facts of this case. Snortland did not himself occupy the leased property, nor was the property relet beyond the period of the original lease. None of the Minnesota cases cited by Larson have held that a reletting, in the absence of a right-of-reentry clause in the lease, constitutes an acceptance of the surrender of a lease by operation of law under circumstances similar to those in this case. Here Snortland, in effect, informed Larson of his intent to relet the farmland and to hold Larson to the terms of the lease. Snortland, in an effort to mitigate the damage arising from Larson's conduct, advertised the farmland for cash rent and relet the property to the highest bidder at approximately one-half the cash rent Larson was obligated to pay. All this occurred at a time when Larson could still have insisted on his right to possess the property, but he did not.

■ The facts also appear to indicate that after Larson abandoned the farmland, the parties agreed that someone else should farm the land. Larson testified that Snortland told him, at a meeting between the parties in late February or early March, that "if I wasn't going to farm it, that he would go ahead and rent it and find somebody else." Larson also testified that he told Snortland "that I did have one gentleman that was interested in farming the land and that I would put the two together." Although Snortland testified that he did not recall telling Larson that he would be reletting the land to someone else, he did indicate that it was his intention at that time to "be prepared to let someone else farm the land." Snortland refused to accept the third party referred to him by Larson as a subtenant under the lease. Snortland testified that he had severe reservations as to the third party's financial status and ability to farm the land, and Larson's ability to "pick up the difference." The lease contained a clause prohibiting Larson from assigning or subletting the leased premises without the prior written consent of Snortland, and absent any agreement that consent would not be unreasonably withheld, Snortland was entitled under Minnesota law to "arbitrarily refuse to accept a subtenant suitable and otherwise responsible." *Torgerson-Forstrom H.I. of Willmar, Inc. v. Olmsted Federal Savings and Loan Association*, 339 N.W.2d 901, 903–04 (Minn.1983). *See Gruman*, 78 N.W.2d at 381–82.

We do not believe that the public interest would best be served by a strict application of *Haycock* to the facts of this case. Although it appears that Minnesota law would have allowed Snortland to let the farmland remain idle and collect the cash rent from Larson, it is nevertheless our view that Snortland should not be penalized

for attempting to minimize the damage, and for attempting to keep the farmland from deteriorating by putting it to some beneficial use. In our opinion, Snortland's reletting of the farmland, when considered in addition to all of the surrounding circumstances, did not require that the district court find an acceptance as a matter of law. The issue of acceptance did properly become a question of fact for the jury.

In our view, there is substantial evidence to support the jury's finding that Snortland did not accept Larson's abandonment of the leased property. We cannot presume, nor did the district court err in failing to presume, a contrary intention. Such intention could not be presumed without doing violence to common sense, as it is clear that the acts of Snortland do not unmistakably evince an intention on his part to terminate the lease. *Stern,* 57 N.W. at 329.

The order of the district court denying Larson's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial is affirmed.

GIERKE and VANDE WALLE, JJ., and PEDERSON, Surrogate Justice, concur.

Surrogate Justice PEDERSON participated in this case by assignment pursuant to § 27–17–03, N.D.C.C.

Justice PAUL M. SAND, who died on December 8, 1984, was a member of this Court at the time this case was submitted.