## JOHN A. BAKER v. WILLIAM ANGLIM.

November 15, 1898.

Nos. 11,328—(44).

Landlord and Tenant—Surrender of Lease of Hotel—Verdict not Sustained by Evidence.

Evidence considered, and *held* insufficient to justify the verdict of the jury.

Action in the district court for Polk county to recover $20,400. The case was tried before Ives, J., and a jury, which rendered a verdict in favor of plaintiff for $2,000. From an order denying a motion for judgment notwithstanding the verdict, or for a new trial, defendant appealed. Reversed.

*De Forest Bucklen* and *A. A. Miller,* for appellant.

*H. Steenerson* and *A. C. Wilkinson,* for respondent.

BUCK, J.

There are 47 assignments of error in this case, but we think that they will all be sufficiently covered by a general review of the case.

Prior to April, 1895, the Crookston Hotel Company was organized for the purpose of building an hotel at Crookston, in this state. Some $18,000 was paid in on stock subscriptions, but some $15,000 more was necessary to complete the hotel; and Louis Fontaine, the Merchants National Bank of Crookston, and George Q. Erskine, stockholders of the hotel company, loaned it $15,000, May 15, 1895, and secured payment thereof by a mortgage on the hotel property, which mortgage ran to the defendant, William Anglim, as trustee, but who was never a stockholder in the hotel company.

On April 22, 1895, the hotel company executed a lease thereof to the plaintiff, John A. Baker, but which was not delivered to him until May 15, 1895. This lease was to run for a term of six years after the completion of the building for hotel purposes, or from

the time it was first actually occupied or owned by Baker. The rental terms in said lease were as follows:

"The said lessee agrees to and with the said lessor to pay as rent for the above-mentioned premises, and compensation for the use of the same, as follows:

First, the said lessee shall pay all taxes which may be levied or assessed against the said building, property or grounds connected therewith, including all grounds covered or conveyed by this lease, which shall be paid each year before the same become delinquent.

Second, to pay all insurance premiums for insurance on said building and buildings connected therewith which may be deemed necessary or procured by the said lessor, not exceeding in amount $20,000 in policies in the aggregate, which insurance premiums shall be paid at the time the policies may be procured by the said lessor, or as soon thereafter as demanded by the insurance companies or their agents.

Third, to pay all interest on whatever mortgage or mortgages may be made or executed by said lessor on said property, not exceeding, however, interest on a mortgage of $15,000, at the best and lowest rates at which the said lessor can procure the same.

Fourth, to pay a yearly percentage at the rate of six per cent. on all the paid-up capital stock of said company, provided that the said lessee shall not be obligated to pay during the first year of this lease any percentage on the stock, and shall not be obligated during any year to pay more than two thousand dollars on account of the two items, interest on mortgages, and percentage on stock.

Fifth, the said lessee shall furnish the said hotel at his own cost and expense, in a suitable manner, with new furniture, and shall run the same in a good and proper manner in every respect as a first-class hotel; and, to insure the prompt performance of the conditions of this lease as to payment of rents, the said lessee shall pay on the first day of each month, to said lessor, the sum of $175 for each and every month during the continuance of this lease; provided at the end of each year the accounts between the said lessor and lessee shall be adjusted by the said lessee paying, in addition to the insurance and taxes and other charges paid by him, and the said $175 per month, whatever further sum shall then be due for the year to said lessor, and shall likewise receive at such settlement from said lessor whatever sums he shall have overpaid. Said lessee shall also keep up, and keep at his own cost and expense, such repairs as may be necessary on the inside of the building during the term of the lease."

On May 15, 1891, the lease was assigned by the hotel company to the defendant, Anglim, as additional security for the said loan of $15,000. Baker took possession of the hotel, under his lease, July

31, 1895; and on July 31, 1896, all rent had been paid, and $2.30 over, which amount was credited on his August rent. After that he paid no rent, notwithstanding plaintiff and his wife testified that he was receiving as profits from $4,000 to $6,000 during the first year he was running the hotel. Why he ceased paying this rent when he was receiving such a large profit from the running of the hotel is not satisfactorily explained. On September 26, 1896, Baker had not paid any further rent, and was in default to the waterworks and the electric light company for back water rent and electric lights for about $600, which claim Anglim understood to be a lien upon the hotel property, and the waterworks company claimed the further right to shut off the water and light in case of default in payment of the rental therefor. The hotel company authorized and requested the defendant, Anglim, to collect the back rent for the hotel, and, if necessary, to take possession of the same. To this end, Anglim, as assignee of the lease, on or about September 26, 1896, began proceedings in justice court to recover possession of the hotel. After trial duly had, judgment was duly rendered October 5, 1896, in favor of Anglim, and against Baker; and upon this judgment a writ of restitution was issued October 6, 1896.

Before this writ was delivered to the sheriff for execution, negotiations between plaintiff and defendant resulted in Baker's surrendering the lease to Anglim, October 6, 1896, which surrender was written upon the lease itself. In the meantime, and before delivery of the writ to the sheriff, time was given Baker to go to St. Paul, and try to sell his furniture to one R. W. Matthews, with whom he had previously negotiated in regard to the same; but he failed to make any satisfactory arrangements with Matthews, and, three days after Baker's return to Crookston, the writ was placed in the sheriff's hands for execution, but Baker's wife successfully resisted its complete execution until he could and did procure an injunction restraining further proceedings under the writ of restitution.

The plaintiff claims that Anglim agreed on October 6, 1896, when the lease was surrendered, and in consideration for his doing so, to permit plaintiff to remain in possession of the hotel for such rea-

sonable time as might be necessary to enable him to find a purchaser for his goods, and that Anglim violated this agreement by attempting to evict him on a later date, and that he also prevented the sale to Matthews, and afterwards to Viets & Dow. The complaint also charges conspiracy with Fontaine to injure plaintiff's business, and in sending a telegram to De Coster & Clark as follows:

"De Coster & Clark, St. Paul:
    Hotel in sheriff's hands. What shall be done with the property? See Finch & Van Slyke. William Anglim."

As to the charge of conspiracy, the evidence fails to substantiate any such allegation, and need not be discussed.

If there was any such agreement as that claimed by plaintiff,— viz., that on October 6, Anglim agreed, in consideration of Baker's surrendering the lease, Anglim would give him a reasonable time to find a purchaser,—his cause of action would have been for violation of contract, and not in tort, which he alleges this action to be. In his brief he alleges that "the action is founded in tort, and not in contract," and, further, that

"The gist of the action is fraud and deceit on the part of the defendant, culminating in trespass upon the possession and interference with the plaintiff's business."

The only trespass which could possibly be alleged as having taken place was that of the sheriff serving or attempting to serve the writ of restitution. But this proceeding was authorized and justified by the judgment in forcible entry and detainer. Baker had broken his contract in failing, for a period of nearly two months, to pay his rent; and this failure fully justified the defendant, Anglim, in taking the legal proceeding which he did to oust Baker from possession of the hotel. There is nothing in this point raised by plaintiff.

When Baker surrendered the lease to Anglim, the right of Baker in the hotel ceased under the original lease, and his only remedy, so far as the use of the hotel was concerned, rested, if at all, upon his alleged agreement with Anglim, which we have just referred to as to Baker's further continuance in the use thereof; but, even if

such contract existed, we are met with Baker's distinct disavowal that he is not suing in this action upon any such contract, but he explicitly avers that the action is one in tort, viz., for fraud and deceit. But, even if this view of the case is not the correct one, plaintiff must fail in his right to recover damages for the time he was in possession of the hotel after he surrendered the lease, because he did not remain in the possession thereof as a lessee, paying rental, but in consideration that he was allowed to remain in possession for such reasonable length of time as might enable him to find a purchaser for his interest in the said hotel, and to sell his furniture. This is substantially his allegation in the complaint by which he is bound. He testified in regard to other matters that "the arrangement was simply that I was to have time to find a purchaser." He does not claim that he was to pay rental after he surrendered the lease, and Anglim is not seeking to collect rental for such time.

Having surrendered the original lease, its terms were no longer binding upon either party. Baker testified that he did surrender the lease, and states the consideration therefor. He remained in possession after its surrender, October 6, to December, 1896, during which time it does not appear that he paid any rental to any one, unless it can be said to have been done eventually through the settlement of November 28, 1896. This period of time was certainly reasonable for him to dispose of his interest in the hotel and his furniture, all of which he did on November 28, 1896, to Scott. We infer from the whole record that the testimony of Baker and his wife in regard to the profits of $4,000 to $6,000 in running the hotel the first year was given as a basis for estimating the damages for the loss of profits from October 6 to November 28, 1896, when Baker sold his furniture. But the plaintiff failed to show the profits from July 31, 1896, to October 6, 1896, but did show that he paid no rental during such time to Anglim or the hotel company, notwithstanding he occupied the hotel during all this time in violation of the terms of his lease; that is, by reason of nonpayment of it. If there were no profits during that time, and especially during the last month thereof, the burden of showing any profits during the two succeeding months rested upon him, which he failed to do.

His answer to this is that Anglim's conduct in causing the writ of restitution to be served had injured his business, and that Anglim's interference with his selling his interest in the hotel and his furniture damaged him in the sum of $20,400.

It is difficult to see how a business which for one or two months prior to October 6 was not sufficient to enable Baker to pay his rent could for the succeeding two months produce profits to any amount whatever. But it is quite evident that the question of running the hotel, and what should be done with the profits arising therefrom, was not contemplated by either party at the time the plaintiff surrendered the lease. There were no terms as to rental and profits, and the terms of the old lease could not govern, for it had been surrendered and its life destroyed by consent of both parties. If, after this surrender of the lease, plaintiff found that the hotel was running without profit, or with insufficient profit, he was at liberty to abandon it at once. No obligation bound him to stay, and, if he did so, it was at his own risk as to profits. But, if he made profits, he kept them from Anglim, so far as appears. And when he discovered, if such was the fact, that the hotel business was not paying, or was running at a loss or small profits, after he surrendered his lease, it was his duty to discontinue the business, or, at least, not charge the loss to Anglim so far as any lease was concerned, for the latter did not desire him to remain, but was anxious for him to quit, as any business man would be where he held a lease and was receiving no rent. But Baker remained nearly or quite two months in the hotel without any lease, and until he sold out to Scott.

Did he suffer any damages by reason of anything which Anglim did in relation to the sale of his interest in the hotel and furniture? So far as Anglim interfered with any sale to Matthews, the evidence fails to show that he did so, and that such charge was groundless. As to Anglim's telegram to De Coster & Clark, it was sent at the request of creditors who desired Anglim to look after their interests, and has in it none of the elements of malice or grounds for a tortious action. Nor did plaintiff show that he was damaged by his failure to sell to Viets & Dow. Dow, who was called by plaintiff, testified that, in the bargain he made with Baker, he was to pay

Baker for the furniture and the stock on hand, the furnishing, and everything in the house, $10,000. Baker eventually sold to Scott for $11,000, and this, too, after the furniture had been used in the hotel more than a year. By not selling to Viets & Dow, he saved $1,000, instead of losing anything. We have not deemed it necessary to discuss the question of settlement between the parties.

We are of the opinion that the plaintiff completely failed to prove any legitimate cause of action against the defendant; that a new trial would not serve any good purpose, or be of any benefit to either party; and hence the trial court from which this appeal is taken is directed to enter an order for judgment absolutely in favor of the defendant, and against the plaintiff.

MITCHELL, J.

I concur. Waiving all questions as to whether the action is ex contractu or ex delicto, or partly each, the plaintiff's case is all in the air. There is no tangible evidence that defendant committed any tortious act, or broke any contract, or that plaintiff ever suffered any damage from any act of the defendant. In reference to the alleged agreement of the defendant to permit the plaintiff to remain in the hotel a reasonable time to enable him to sell his furniture, it appears that he did remain until he made the sale, and that he then vacated the premises voluntarily.

CANTY, J.

I concur with MITCHELL, J.