## PALACE THEATRE, INC. v. NORTHWEST THEATRES CIRCUIT, INC.[1]

July 22, 1932.

No. 28,914.

*H. J. Charles,* for appellant.
*H. Z. Mendow,* for respondent.

LORING, J.

This is an appeal from a judgment in the sum of $6,072.33 in favor of the plaintiff in a suit to recover a part of the $15,000 deposited as an alleged guaranty of rent on a lease of the Palace Theatre in Minneapolis and as liquidated damages for the breach of its terms.

[1] Reported in 243 N. W. 849.

The facts were stipulated. The case was dismissed as to the Publix Theatres, Inc., and the Northwest Theatres Circuit, Inc. will hereinafter be referred to as the defendant. The court found for the plaintiff to the extent of the sum first above named.

October 1, 1914, George Benz & Sons leased the Palace Theatre to Finkelstein & Ruben for a period of 20 years expiring October 4, 1934, at an annual rental of $28,400 per year. Finkelstein & Ruben assigned the lease to the Twin City Amusement Trust Estate, which in turn assigned it to the defendant. May 21, 1929, the defendant sublet the theatre to Clamage & Rothstein, who deposited with the defendant the sum of $15,000,

"for the purpose of guaranteeing the performance of this lease by sublessees or their assignee or assignees, and the purpose hereinafter stated. Sublessor acknowledges receipt of said sum of Fifteen Thousand Dollars ($15,000.00) for the purposes hereinbefore and hereinafter stated, and agrees to pay to sublessees interest at the rate of five (5) per cent per annum payable semi-annually, on Five Thousand Dollars ($5,000.00) thereof to April 4, 1934, and on Ten Thousand Dollars ($10,000.00) thereof until consumed as rent, provided the same shall remain on deposit and unimpaired with sublessor for such period of time. If sublessees or their assignees shall make default in the performance of this lease, and if the same shall be, as the result thereof, terminated, then sublessor is authorized to keep and retain the said sum of Fifteen Thousand Dollars ($15,000.00) as liquidated damages for the breach or default of the terms, covenants and/or conditions of this lease by sublessees or their assignees. If sublessees or their assignees shall promptly and faithfully perform and carry out each and all of the terms, covenants and conditions of this lease for the full term of this lease, then Ten Thousand Dollars ($10,000.00) of the said sum of Fifteen Thousand Dollars ($15,000.00) shall be applied in payment of the last Ten Thousand Dollars ($10,000.00) in rent to become due under this lease. Sublessor has been compelled to agree to deposit Five Thousand Dollars ($5,000.00) with Geo. Benz & Sons on April 4, 1934, to guarantee sublessees' performance of a lease agreement with

said Geo. Benz and Sons. If sublessees shall fully perform their agreement with Geo. Benz & Sons and the lease to be made, and if said Geo. Benz & Sons shall return said Five Thousand Dollars ($5,000.00) to sublessor, then sublessor agrees to return said Five Thousand Dollars ($5,000.00) without interest to sublessees."

The written consent of George Benz & Sons to this sublease was obtained, and they entered into a separate agreement with Clamage & Rothstein whereby the latter agreed to enter into a lease of the theatre for five years beginning October 5, 1934, the date of the expiration of the original lease to Finkelstein & Ruben. A draft of the lease to be executed was attached to the agreement. George Benz & Sons however reserved the right to cancel and terminate that agreement by notice to be served prior to April 4, 1934. Clamage & Rothstein were to deposit with George Benz & Sons the sum of $5,000 as a guaranty that they would enter into the five-year lease, pay the rent provided for, and perform all the covenants contained therein. If they failed so to do, the $5,000 was to be forfeited to George Benz & Sons. If they fully performed, they were to have the $5,000 returned to them on the fourth of October, 1939, with five per cent interest. The draft of lease attached to the agreement provides a multitude of terms and conditions to be complied with by the lessees, the breach of some of which would obviously result in but slight damage, while the breach of others might be more serious. From the terms of the sublease above quoted, we assume that defendant and George Benz & Sons agreed to meet this deposit requirement by obligating defendant to deposit $5,000 before April 4, 1934, and in turn the defendant compelled Clamage & Rothstein to deposit $5,000 with it at the time the sublease was made.

By consent of all parties, Clamage & Rothstein organized the plaintiff corporation for the purpose of taking over the sublease and operating the theatre thereunder. The plaintiff paid the monthly rental up to and including the rent for the month of December, 1929, and has paid none since. March 7, 1930, the plaintiff sent the defendant a telegram stating: "Impossible to refinance Palace Theatre very sorry but we will be unable to continue any further."

March 8, 1930, plaintiff vacated the theatre and removed its personal property therefrom, and March 15, 1930, surrendered the keys to the defendant, which on April 5, 1930, resumed possession of the premises.

This suit was brought to recover that part of the $15,000 deposit not consumed by rent which had accrued up to the time when the defendant accepted the surrender of the premises.

The defendant contended that it might rightfully retain the entire $15,000 as liquidated damages for failure of plaintiff to carry out the terms of the sublease, and because it asserts that the $15,000 was paid as an independent consideration for making the sublease. It made a further claim that it might retain it as rent paid in advance and because the lease had been terminated.

The trial court took the view that the manner in which the premises were abandoned by plaintiff and possession resumed by defendant constituted a surrender and mutual relinquishment of rights and obligations under the lease. It therefore found for the plaintiff to the extent that rent accruing prior to April 5, 1930, had not absorbed the $15,000 deposit.

The court's very helpful memorandum states its reason with clarity. It reads as follows:

"Plaintiff gave notice of abandonment of its lease on March 7, 1930, moved out next day, and surrendered the keys on or about March 15. Defendant 'resumed possession' (in the words of the stipulation of facts) on or about April 5, 1930. It would be doing no violence to this language to interpret it as meaning that on the date named defendant acquiesced in plaintiff's abandonment of the lease, thus making the transaction one of 'surrender,' i. e., mutual relinquishment of rights and obligations under the lease. This is what 'resumption of possession' means in Nelson v. Thompson, 23 Minn. 508; Minneapolis Co-op. Co. v. Williamson, 51 Minn. 53, 52 N. W. 986, 38 A. S. R. 473; Stern v. Thayer, 56 Minn. 93, 57 N. W. 329; Buckingham Apt. House Co. v. Dafoe, 78 Minn. 268, 80 N. W. 974; and Millis v. Ellis, 109 Minn. 81, 122 N. W. 1119; and I find no Minnesota case in which the term is used in any other sense. See also, 4 Dun. 124.

"However, if it is understood that the parties meant to stipulate only the date on which the lessor took over the *occupancy* of the premises, I am nevertheless satisfied that there was a surrender. Paragraph D of the lease (by which is meant, of course, the sublease, exhibit 2 of the stipulation of facts) provides that if plaintiff shall abandon the premises during the term, or otherwise violate the provisions of the lease defendant may, upon ten days' written notice either reënter without waiver of any rights under the lease or declare a forfeiture and 'repossess itself as of its former estate.' Neither option was exercised because the required notice was not given. True, the stipulation does not expressly so recite but such is the reasonable and indeed inevitable inference, since it must be assumed that if notice had been given the stipulation would disclose a fact of so much importance. Therefore defendant's 'possession' even in the most restricted sense which the stipulation of facts might warrant, would be outside the express terms of the lease and would be such possession as would convert plaintiff's abandonment into a surrender of the premises. Since there was a surrender defendant retained no rights under the lease except the right to rent which had accrued down to April 5, when the surrender was completed, i. e., rent for four months. The plaintiff's default was cured by defendant's acquiescence, and therefore the retention of the $15,000 deposit was waived, whether it be viewed as penalty or liquidated damages, except as to the accrued rent."

We agree with the views of the trial court. The abandonment of the premises and the resumption of possession was sufficient evidence to support a finding that the acts of the parties amounted to a surrender and terminated the relation of landlord and tenant between the parties. The effect of that was to relieve the parties of obligations accruing to each other under the sublease, subsequent to the surrender. Carter v. Strom, 41 Minn. 522, 43 N. W. 394; Stern v. Thayer, 56 Minn. 93, 57 N. W. 329; Baker v. Anglim, 74 Minn. 246, 77 N. W. 45. Moreover, as indicated by the trial court, the retention of the $15,000 as liquidated damages was by the terms

of the sublease made dependent upon the sublease being terminated on account of default rather than by surrender.

It is contended, however, that the obligation of defendant to George Benz & Sons to deposit $5,000 for plaintiff's benefit had already been incurred at the time of surrender, and that consequently plaintiff is not relieved from the terms of the sublease authorizing the holding of $5,000 of the $15,000 deposit on that account. We regard the arrangement requiring the deposit with George Benz & Sons as a provision for a penalty and unenforceable because it purports to fix the same sum as liquidated damages for the breach of numerous stipulations of various character and importance, for some of which the damages could readily be ascertained and which would necessarily be inconsiderable in amount as compared with the sum deposited. Johnson v. Dittes, 137 Minn. 175, 162 N. W. 1078; Goodell v. Accumulative Income Corp. 185 Minn. 213, 240 N. W. 534; Noble v. Sturm, 210 Mich. 462, 178 N. W. 99. The same reasoning applies to the like provision in the sublease.

We do not regard the $15,000 consideration for making the lease nor as payment of rent in advance. The purpose of its deposit was otherwise defined in the sublease.

Therefore, we see no legal reason for the retention by defendant of that part of the deposit not absorbed by rent which had accrued prior to the surrender.

Judgment affirmed.

WILSON, C. J. (dissenting).

I dissent.