# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-0194

Lagoon Partners, LLC, a Minnesota limited liability company,
Respondent,

vs.

Silver Cinemas Acquisition Co., a Delaware corporation,
d/b/a Landmark Theatres,
Appellant.

**Filed December 11, 2023**
**Reversed and remanded**
**Johnson, Judge**

Hennepin County District Court
File No. 27-CV-21-11262

Blake R. Nelson, Brian N. Niemczyk, Ryan M. Theis, J. Robert Keena, Hellmuth & Johnson, Edina, Minnesota (for respondent)

Erik F. Hansen, Elizabeth M. Cadem, Kirk A. Tisher, Burns & Hansen, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Cochran, Presiding Judge; Johnson, Judge; and Klaphake, Judge.[*]

## SYLLABUS

The liquidated-damages clause in the parties' lease agreement is unenforceable because actual damages caused by the tenant's breach are capable of accurate estimation and because the amount of liquidated damages, which does not account for the landlord's duty to mitigate damages, is not a reasonable forecast of actual damages.

---

[*]Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

**JOHNSON**, Judge

This appeal presents a question as to whether a liquidated-damages clause in a commercial lease agreement is enforceable. We conclude that the liquidated-damages clause in the parties' lease agreement is unenforceable because actual damages caused by the tenant's breach are capable of accurate estimation and because the amount of liquidated damages, which does not account for the landlord's duty to mitigate damages, is not a reasonable forecast of actual damages. Therefore, we reverse and remand.

## FACTS

The Uptown Theater is located in south Minneapolis at the intersection of Hennepin Avenue South and Lagoon Avenue. It was the site of single-screen cinema from the early 20th Century to the early 21st Century, and it has become an icon of its namesake neighborhood.

### Lease Agreement

In 2011, the property was owned by Lagoon Partners LLC, which is owned and managed by Ned Abdul. Silver Cinemas Acquisition Co. (d.b.a. Landmark Theatres) was leasing the property and was showing specialty and independent films, as it had done since 1978.

In October 2011, after several months of negotiations, Lagoon and Landmark entered into a new 15-year lease. According to Landmark's vice president of real estate, Abdul stated during the 2011 negotiations that he wanted to convert the property into a

2

performance venue but did not believe that the city would allow that type of use because of the historic nature of the property.

The new lease term began a year later, in September 2012, and was to end in September 2027. The lease provides that the base monthly rent is $16,667 during the first five years of the lease term; $18,333 during the second five-year period; and $20,417 during the last five-year period, with additional amounts due each year for common-area maintenance and real-property taxes.

The lease also provides certain remedies for Lagoon in the event of a default by Landmark. The lease allows Lagoon to re-enter the property, and, in addition, to either suspend Landmark's right of possession and relet the property or to terminate the lease and recover the rent then due and unpaid. The lease provides that, if Lagoon elects to terminate the lease, Landmark's obligations would be accelerated so that it would be required to pay Lagoon the sum of the rent then due and unpaid and the present value of all rent payments remaining for the duration of the lease term:

> Upon such termination . . . , Tenant shall pay Landlord upon demand, in addition to [the rent due at the time of Landlord's re-entry], the following: (i) Net Rent, and additional rent for the period between such reentry and such termination, and (ii) as damages for loss of the bargain and not as a penalty, an aggregate sum which at the time of such termination of this Lease represents an amount equal to the present value (discounted at the rate of seven percent per annum) of the Net Rent and additional rent payable for the unexpired balance of the initial term or any renewal term ("Remaining Rent"), as the case may be, of the Lease.

3

Furthermore, the lease provides that Lagoon is entitled to liquidated damages in an amount equal to the sum of the rent then due and unpaid and the present value of the accelerated future rent payments:

> If any statute or rule of law governing the proceedings in which such damages are to be proved shall limit the amount of such claim, Landlord shall be entitled to prove, as and for liquidated damages, by reason of such breach and termination of this Lease, the maximum amount which may be allowed by or under such statute or rule of law. Nothing herein shall limit or prejudice Landlord's right to prove and obtain as liquidated damages arising out of such breach or termination the maximum amount allowed by any such statute or rule of law which may govern the proceedings in which such damages are to be proved whether or not such amount be greater, equal to, or less than the amount of the excess of the then present worth of the Rent and all other charges reserved herein over the then present worth of the fair market rents and all other charges referred to above.

**Default**

On March 13, 2020, the governor issued an emergency executive order declaring a peacetime emergency due to the COVID-19 pandemic. Emerg. Exec. Order No. 20-01, *Declaring a Peacetime Emergency and Coordinating Minnesota's Strategy to Protect Minnesotans from COVID-19*, at 2-3 (Mar. 13, 2020). On March 16, 2020, the governor issued another emergency executive order that required the immediate closure to the public of certain places of public accommodation, including "[t]heaters and cinemas." Emerg. Exec. Order No. 20-04, *Providing for Temporary Closure of Bars, Restaurants, and Other Places of Public Accommodation*, at 2 (Mar. 16, 2020). Landmark complied with that emergency executive order by temporarily closing the Uptown Theater. In early May 2020, Landmark's president wrote a letter to Abdul proposing a lease modification that, among

4

other things, would have reduced the amount of the monthly rent after the theater reopened to the public. The parties exchanged e-mail messages but did not agree on a modification.

On June 5, 2020, the governor issued an emergency executive order that allowed theaters and cinemas to reopen, subject to certain restrictions. Emerg. Exec. Order No. 20-74, *Continuing to Safely Reopen Minnesota's Economy and Ensure Safe Non-Work Activities During the COVID-19 Peacetime Emergency*, at 8 (June 5, 2020). Landmark had intended to reopen the theater when allowed to do so. But Landmark refrained from doing so, initially because of civil unrest in the Uptown neighborhood following the highly publicized death of George Floyd on May 25, 2020,[1] and later because of an increased level of crime and violence nearby, which Landmark believed would discourage moviegoers from visiting the Uptown neighborhood. Landmark's plans to reopen were adversely affected by another emergency executive order in November 2020, which again temporarily closed theaters and cinemas to members of the public until December 18, 2020. Emerg. Exec. Order No. 20-99, *Implementing a Four Week Dial Back on Certain Activities to Slow the Spread of COVID-19*, at 4, 12 (Nov. 18, 2020).

In May 2021, Lagoon sought to recover possession of the property by commencing an eviction action against Landmark based on its non-payment of rent. Within days, Landmark voluntarily surrendered the property to Lagoon. The eviction action was dismissed by a stipulation of the parties.

---

[1]A Minneapolis police officer subsequently was convicted of second-degree unintentional murder for Floyd's death, and the conviction was affirmed on direct appeal. *State v. Chauvin*, 989 N.W.2d 1 (Minn. App. 2023), *rev. denied* (Minn. July 18, 2023), *cert. denied*, 2023 WL 8007423 (U.S. Nov. 20, 2023).

In June 2021, Lagoon gave notice to Landmark of its termination of the lease. Lagoon demanded payment of $364,212 in unpaid rent as of May 2021 and $1,444,258 for the present value of future rent payments, for a total of $1,808,470. Landmark did not pay any of the amount demanded.

**Litigation**

In September 2021, Lagoon commenced this action against Landmark. Lagoon's complaint alleges one cause of action—breach of contract—and seeks damages of $1,808,470, plus attorney fees, costs, and disbursements.

In December 2021, the district court filed a scheduling order that, among other things, set a discovery deadline of June 6, 2022. In January 2022, Landmark served Lagoon with interrogatories and requests for production of documents. In response to an interrogatory concerning any efforts made by Lagoon to mitigate its damages, Lagoon answered as follows: "Plaintiff attempted to negotiate an amended lease with Defendant. Plaintiff also placed the space on the market for rent from a new tenant; however, no prospective tenants were interested." In response to an interrogatory concerning "any construction work that has occurred on the Property since January of 2020," Lagoon answered that it "began demolition work to the interior of the building in January 2022" but that "[n]o other construction has taken place."

In early March 2022—three months before the discovery deadline—Lagoon served and filed a motion for summary judgment, to be heard on the last day of that month. In its memorandum of law, Lagoon argued that Landmark had breached the lease and that Lagoon is entitled to the liquidated damages specified in the lease.

Landmark made multiple arguments in its responsive memorandum of law. First, Landmark argued that its breach of the lease should be excused by the doctrine of frustration of purpose. Second, Landmark argued that the liquidated-damages clause in the lease is an unenforceable penalty. Third, Landmark argued that there are disputed questions of material fact as to whether, and the extent to which, Lagoon had mitigated its damages. In support of that argument, Landmark asserted that Lagoon was in the process of redeveloping the property into a performance venue. That assertion was based primarily on a then-recent news article that described Abdul's then-ongoing work to renovate the property and combine it with an adjacent property into a venue that would host concerts and similar events, with a capacity of 2,500 persons. The news article stated that the city had approved a permit for the proposed venue and that Adbul hoped to complete the renovation by the end of 2022.[2] Fourth, Landmark argued, in the alternative, that the district court should defer ruling on Lagoon's summary-judgment motion so that Landmark could continue to conduct discovery on Lagoon's mitigation efforts, including a deposition of Adbul.

In June 2022, the district court filed an order granting Lagoon's summary-judgment motion. The district court rejected Landmark's frustration-of-purpose defense. The district

---

[2]Chris Riemenschneider, *Uptown Theater, a Minneapolis Landmark, Will Be Transformed into a Music/Events Center*, Minneapolis Star Tribune, Feb. 1, 2022, https://www.startribune.com/uptown-theater-owner-outlines-plans-to-turn-the-minneapolis-landmark-into-a-music-events-center/600141808/ [https://perma.cc/KS83-HNTQ]. Lagoon argues that the news article is inadmissible hearsay. But Lagoon did not challenge the admissibility of the news article in the district court. Thus, the argument has been forfeited. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).

court concluded that the liquidated-damages clause in the lease is enforceable and that, as a consequence, Lagoon is not required to mitigate its damages. The district court further concluded that, in light of its ruling on the enforceability of the liquidated-damages clause, further discovery concerning mitigation is unnecessary. After Lagoon waived its claim for attorney fees, the district court entered judgment for Lagoon in the amount of $1,808,470, plus costs and disbursements.

Landmark appeals. Landmark does not challenge the district court's rejection of its frustration-of-purpose defense. Landmark focuses its appeal on the enforceability of the liquidated-damages clause, the issue of mitigation, and its interest in continuing to conduct discovery concerning mitigation.

## ISSUE

Did the district court err by concluding that the liquidated-damages clause in the parties' lease agreement is enforceable, by granting Lagoon's summary-judgment motion, and by entering judgment in favor of Lagoon in the amount of $1,808,470?

## ANALYSIS

Landmark argues that the district court erred by granting Lagoon's motion for summary judgment and entering judgment in the amount of $1,808,470. Landmark's argument has multiple parts. Landmark first argues that the liquidated-damages clause in the lease is unenforceable as a matter of law. Landmark next argues, in the alternative, that if the liquidated-damages clause is not unenforceable as a matter of law, there exist genuine issues of material fact concerning its enforceability. Landmark last argues that the district

8

court erred by not deferring ruling on the summary-judgment motion so that it could continue to conduct discovery on the issue of Lagoon's mitigation efforts.

A district court must grant a motion for summary judgment "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.01. A genuine issue of material fact exists if a rational trier of fact, considering the record as a whole, could find for the non-moving party. *Frieler v. Carlson Mktg. Grp., Inc.*, 751 N.W.2d 558, 564 (Minn. 2008). This court applies a *de novo* standard of review to the district court's legal conclusions and views the evidence in the light most favorable to the non-moving party. *Staub v. Myrtle Lake Resort, LLC*, 964 N.W.2d 613, 620 (Minn. 2021).

**A.**

We begin by identifying the applicable law. The enforceability of a contractual liquidated-damages clause was in dispute in *Gorco Construction Company v. Stein*, 99 N.W.2d 69 (Minn. 1959), which concerned a contract for the construction of two residential garages. *Id.* at 71-72. The supreme court described its prior opinions on the issue and stated generally applicable principles. *Id.* at 74-76. We believe that the *Gorco* opinion provides the framework that guides our analysis. *See Maslowski v. Prospect Funding Partners LLC*, 978 N.W.2d 447, 455 (Minn. App. 2022), *rev'd on other grounds*, 994 N.W.2d 293 (Minn. 2023); *Bellboy Seafood Corp. v. Nathanson*, 410 N.W.2d 349, 352 (Minn. App. 1987); *Dean Van Horn Consulting Associates, Inc. v. Wold*, 395 N.W.2d 405, 407 (Minn. App. 1986).

9

A liquidated-damages clause in a contract is "prima facie valid on the assumption that the parties in naming a liquidated sum intended it to be a fair compensation for an injury caused by a breach of contract and not a penalty for nonperformance." *Gorco*, 99 N.W.2d at 74. But "[t]he fact that the parties have designated the sum to be paid as liquidated damages is not controlling or conclusive." *Meuwissen v. H.E. Westerman Lumber Co.*, 16 N.W.2d 546, 549 (Minn. 1944). Rather, "Courts must ascertain whether payment stipulated is in truth liquidated damages or a penalty." *Id.* Accordingly, despite the presumption of validity, the supreme court "has not hesitated . . . to scrutinize a particular provision to ascertain if it is one for a penalty or one for damages." *Gorco*, 99 N.W.2d at 74. The answer to that question depends on "whether the amount agreed upon is reasonable or unreasonable in the light of the contract as a whole, the nature of the damages contemplated, and the surrounding circumstances." *Id.*

The *Gorco* court noted that, in determining the reasonableness or unreasonableness of liquidated-damages clauses, the supreme court previously had held "that where the actual damages resulting from a breach of the contract cannot be ascertained or measured by the ordinary rules, a provision for liquidated damages not manifestly disproportionate to the actual damages will be sustained." 99 N.W.2d at 75 (citing *McGuckin v. Harvey*, 225 N.W. 19 (Minn. 1929); *Chapman v. Propp*, 147 N.W. 442 (Minn. 1914); *Taylor v. Times Newspaper Co.*, 86 N.W. 760 (Minn. 1901); and *Fasler v. Beard*, 38 N.W. 755 (Minn. 1888)). The *Gorco* court also noted, "On the other hand, when the measure of damages resulting from a breach of contract is susceptible of definite measurement, we have uniformly held an amount greatly disproportionate to be a penalty." *Id.* (citing *Dryer*

10

*v. Kistler*, 136 N.W. 750 (Minn. 1912); *J.I. Case Threshing Machine Co. v. Fronk*, 117 N.W. 229 (Minn. 1908); and *Maudlin v. American Savings & Loan Ass'n*, 65 N.W. 645 (Minn. 1896)).

The *Gorco* court also stated that Minnesota law is "in accord with" the following provision of the *Restatement of Contracts*:

> An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless
>
> (a)    the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and
>
> (b)    the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.

*Id.* at 74 (quoting Restatement of Contracts § 339(1) (1932)).

In light of *Gorco*, we first ask whether Lagoon's actual damages resulting from Landmark's breach of the lease are "incapable or very difficult of accurate estimation." *See id.* at 75. If not, the liquidated-damages clause in the lease is unenforceable. *See id.* If Lagoon's actual damages *are* "incapable or very difficult of accurate estimation," we then would ask whether the amount of liquidated damages is "a reasonable forecast of just compensation for the harm that is caused by the breach." *See id.* at 74-75. If so, the liquidated-damages clause in the lease is enforceable. *See id.* But if the amount of liquidated damages is *not* a reasonable forecast of just compensation, the liquidated-damages clause in the lease is unenforceable. *See id.*

11

The enforceability of a liquidated-damages clause is a question of law, which requires this court to apply a *de novo* standard of review. *Maslowski*, 978 N.W.2d at 455 (citing *St. Jude Med., Inc. v. Medtronic, Inc.*, 536 N.W.2d 24, 27 (Minn. App. 1995), *rev. denied* (Minn. Oct. 27, 1995)).

**B.**

We begin our analysis of the parties' arguments by considering whether Lagoon's actual damages resulting from Landmark's breach of the lease are "incapable or very difficult of accurate estimation." *See Gorco*, 99 N.W.2d at 74-75.

In *Gorco*, which concerned a breach of a construction contract, the plaintiff contended that the liquidated-damages clause, which specified damages of 15 percent of the contract price, was justified by the difficulty of proving certain types of expenses: sales commissions, advertising, and the commitment of "labor and equipment to perform the work." 99 N.W.2d at 74. The supreme court rejected the plaintiff's argument, reasoning that "the provision for liquidated damages covered specific elements of damages which were clearly and readily susceptible of definite measurement and proof by ordinary rules." *Id.* at 75. The supreme court addressed each component of the liquidated-damages amount. *Id.* With respect to the first item, the supreme court stated, "Obviously the amount of a salesman's commission is easily ascertained," and, furthermore, "No attempt was made to prove the payment of any commission." *Id.* With respect to the second item, the supreme court reasoned, "Whether any advertising expense was attributable to the solicitation of defendant's order does not appear, but in any event it was another item susceptible of proof." *Id.* With respect to the third item, the supreme court reasoned that "the actual

committing of any labor or equipment to perform the contract was susceptible of proof without difficulty" and, furthermore, that "plaintiff learned that defendant had cancelled the contract prior to any commitment of labor or equipment and therefore no expenses therefor were incurred by plaintiff." *Id.*

The type of financial injuries that are incapable or very difficult of accurate estimation is illustrated by the supreme court's opinion in *Meuwissen*. The defendant in that case purchased a business from the plaintiff, who agreed to not compete against the defendant after the transaction. 16 N.W.2d at 547-48. The defendant counterclaimed for breach of the agreement and relied on a contractual liquidated-damages clause. *Id.* at 547-49. The supreme court enforced the liquidated-damages clause and explained as follows:

> The function of and necessity for the stipulation for liquidated damages is well illustrated here. The value of goodwill in the lumber business is an item of damage which would be extremely difficult to prove. Loss of profits might be claimed to be due to difference in management, to the war, the uncertainty of the times, and to other uncertain factors rather than to competition. It is hard to conceive of damages which would be more difficult to prove than the kind here involved. The difficulty of proving such damages is an important factor in determining whether or not the provision in the contract is a penalty.

*Id.* at 550.

In a case such as this one, it is not difficult to identify and measure the rent payments that a tenant does not pay to a landlord. Indeed, Lagoon calculated the exact amount of Landmark's accelerated rent obligation, and the district court adopted that number in its order for judgment. Similarly, it is not difficult to identify and measure any rent payments that a landlord receives from a new tenant of the property. *See, e.g., Newberg v. Conley,*

13

252 N.W. 221, 222 (Minn. 1934) (affirming trial court's damages award consisting of tenant's unpaid rent less rent payments received from new tenant). In most cases, the relevant facts concerning the landlord's mitigation efforts will be known to the parties and to the court before trial or before a dispositive motion.

Even if the results of a landlord's mitigation efforts are not yet fully known at the time of trial, that fact would not mean that the landlord's damages are "incapable or very difficult of accurate estimation." *See Gorco*, 99 N.W.2d at 74. A plaintiff seeking damages for lost profits must prove the amount of such damages only "to a reasonable probability," and "[t]he law does not require mathematical precision in proving lost profits." *Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 920, 921 (Minn. 1990). "Once the fact of loss has been shown, the difficulty of proving its amount will not preclude recovery so long as there is proof of a reasonable basis upon which to approximate the amount." *Leoni v. Bemis Co.*, 255 N.W.2d 824, 826 (Minn. 1977). Damages for lost profits may be awarded even if the amount of lost profits depends on future events. *See, e.g., Cardinal Consulting Co. v. Circo Resorts, Inc.*, 297 N.W.2d 260, 266-69 (Minn. 1980); *Duchene v. Wolstan*, 258 N.W.2d 601, 605-06 (Minn. 1977); *Tate v. Scanlan Int'l, Inc.*, 403 N.W.2d 666, 673-74 (Minn. App. 1987), *rev. denied* (Minn. May 28, 1987). This court has applied these principles to damages awards for lost profits in breach-of-lease cases. *See Vault, Inc. v. Michael-Northwestern P'ship*, 372 N.W.2d 7, 9 (Minn. App. 1985) (affirming damages award based on estimated future inflation during 10-year lease term and affirming denial of damages for lost profits as too speculative because company and type of business was new and unproven), *rev. denied* (Minn. Sept. 13, 1985); *Nelson v. Smith*, 349 N.W.2d 849,

14

854 (Minn. App. 1984) (affirming damages award based on multi-variable calculation of plaintiff's estimated lost profits), *rev. denied* (Minn. July 26, 1984). For these reasons, Landmark's breach of the lease does not present any difficulties of proof of the type described in *Meuwissen,* in which lost profits could be attributable either to the loss of goodwill arising from a breach of a non-competition agreement or to numerous other factors, some of which were outside the control of the parties. *See* 16 N.W.2d at 550.

Indeed, the supreme court has held that a landlord's damages resulting from a tenant's breach of a lease can be ascertained or measured by the ordinary rules and are susceptible of definite measurement. In *Palace Theatre v. Northwest Theatres Circuit*, 243 N.W. 849 (Minn. 1932), the plaintiff-landlord obtained a $15,000 deposit from the defendant-tenant and, after a subtenant breached, claimed that the amount of the deposit was liquidated damages for the breach. *Id.* at 849-50. The trial court disagreed and awarded actual damages of $6,072. *Id.* at 849-51. The supreme court affirmed, reasoning that the requirement of a deposit was "a provision for a penalty and unenforceable because it purports to fix the same sum as liquidated damages for the breach of numerous stipulations of various character and importance, for some of which *the damages could readily be ascertained.*" *Id.* at 851 (emphasis added).

We acknowledge that Lagoon did not relet the property to a new tenant but, rather, has undertaken to redevelop the property for a different purpose and, apparently, to operate it as a somewhat different type of business. Those facts suggest a different type of mitigation than the typical case. Nonetheless, there is no apparent reason why the expenses and revenues associated with the redevelopment cannot be ascertained and measured by

15

ordinary principles. Most importantly, Lagoon does not make any argument that its mitigation efforts are incapable of accurate estimation because they consist of a redevelopment. Without any such argument by Lagoon, we will not reach such a conclusion on our own initiative.

The district court in this case reasoned that Lagoon's damages are incapable of accurate estimation on the ground that "multiple actions over the course of years would be necessary to quantify the damages from the breach," as those amounts of rent became due. The traditional common-law rule is that "[r]ent to be paid in the future is not a debt or liability for the recovery of which a present action will lie." *Ambrozich v. City of Eveleth*, 274 N.W. 635, 640 (Minn. 1937). But that general rule does not apply if a lease contains a rent-acceleration clause; in that event, a landlord may sue a defaulting tenant for breach of a lease and obtain a judgment that accounts for the tenant's future rent obligations. *See Eickhof v. Health Dimensions Rehab., Inc.*, No. C4-99-1908, 2000 WL 558154, at *3 (Minn. App. May 9, 2000) (citing *Ambrozich*, 274 N.W. at 640). In this case, the parties' lease includes a rent-acceleration clause, which Lagoon invoked when it terminated the lease, which made it unnecessary for Lagoon to assert multiple lawsuits against Landmark.

Thus, Lagoon's actual damages resulting from Landmark's breach of the lease are *not* "incapable or very difficult of accurate estimation." *See Gorco*, 99 N.W.2d at 75. Therefore, the liquidated-damages clause in the lease is unenforceable.

16

## C.

Although our conclusion in part B is sufficient to resolve Landmark's primary argument, we also will consider whether the amount of liquidated damages is "a reasonable forecast of just compensation for the harm that is caused by the breach." *See id.* at 74-75.

In *Gorco,* the supreme court analyzed this issue by closely examining the plaintiff's evidence of the losses caused by the defendant's breach. 99 N.W.2d at 75-76. Specifically, the supreme court recited the testimony of plaintiff's president concerning the company's expense ratios and commented that "it is difficult to see precisely what bearing" those ratios have "on the reasonableness of the stipulated-damages provision here under consideration." *Id.* at 75. The supreme court also stated that damages may not be based on general administrative expenses without proof that they were increased by the defendant's breach. *Id.* at 75-76 (citing *Goodell v. Accumulative Income Corp.*, 240 N.W. 534, 537 (Minn. 1932)). The supreme court stated that "the record is almost devoid of any evidence that would tend to support a conclusion that the sum stipulated for liquidated damages . . . bears any reasonable relation to plaintiff's pecuniary loss" and, accordingly, that "it must be concluded that the provision for liquidated damages is in the nature of a penalty and is therefore unenforceable." *Id.* at 76.

Similarly, in *Palace Theatre*, which concerned a commercial lease, the supreme court determined that the liquidated-damages clause was unenforceable because some components of the landlord's claim for damages "would necessarily be inconsiderable in amount as compared with" the amount of liquidated damages. 243 N.W. at 851.

17

In *Meuwissen*, on the other hand, the supreme court determined that the liquidated-damages clause was enforceable because the amount of liquidated damages had a "reasonable relation to the contemplated damages." 16 N.W.2d at 551.

In general, if a tenant has breached a lease and the landlord has terminated the lease, the landlord's customary remedy is "damages resulting from the breach with the attendant obligation upon the lessor to use reasonable efforts to mitigate such damages subsequent to the breach." *Gruman v. Investors Diversified Services*, 78 N.W.2d 377, 381 (Minn. 1956); *see also Newberg*, 252 N.W. at 222 (affirming trial court's damages award consisting of tenant's unpaid rent less rent payments received from new tenant); *Galbraith v. Wood*, 144 N.W. 945, 948 (Minn. 1914) (stating that liability for unpaid rent is limited to "any deficiency in the amount of rent obtained on a lease to another"). In this case, the amount of liquidated damages is the sum of past-due rent and the present value of future rent. But the liquidated-damages clause does not account for Lagoon's duty to mitigate damages. In essence, the liquidated-damages clause assumes that Lagoon would be unable to relet the property to any other tenant and that the property would be vacant for the remainder of the 15-year lease term. Because the liquidated-damages clause does not account for Lagoon's duty to mitigate damages, it is not "a reasonable forecast of just compensation for the harm that is caused by the breach." *See Gorco*, 99 N.W.2d at 74-75.

In addition, the liquidated-damages clause does not account for the alleged fact (which must be viewed in the light most favorable to the non-moving party, Landmark) that Abdul had a desire or intention in 2011 to redevelop the property into a performance venue and was undertaking such a redevelopment in early 2022. The prospect of a

18

redevelopment gives rise to the possibility that the profitability of the property could be significantly different from that contemplated by the terms of the lease. Such a redevelopment conceivably could be more remunerative for Lagoon than if Landmark had fulfilled all of its lease obligations or if Lagoon had relet the property to another tenant with similar terms. *See, e.g.*, *Provident Mut. Life Ins. Co. v. Tachtronic Instruments, Inc.*, 394 N.W.2d 161, 165 (Minn. App. 1986) (affirming jury's finding that landlord's post-termination damages were zero because landlord relet property at higher rent and because of market value of property). Again, Lagoon does not make any argument that the liquidated damages are a reasonable estimate of its actual damages after redevelopment. And again, without any such argument by Lagoon, we are disinclined to reach such a conclusion on our own initiative.

The district court reasoned that the amount of liquidated damages is a reasonable estimate of Lagoon's actual damages for four reasons. First, the district court reasoned that numerous expenses would need to be considered to determine actual damages, such as "[t]he costs associated with reletting the premises, potential time necessary to locate a suitable replacement tenant, and existing market for reletting the premises" as well as the uncertainty surrounding whether "the premises would be relet during the remaining period of the lease." But a similar situation was presented in *Gorco*, and the supreme court analyzed the evidence of the various components of the plaintiff's actual damages before concluding that the liquidated damages did not "bear[] any reasonable relation to plaintiff's pecuniary loss." 99 N.W.2d at 76. In addition, the uncertainty concerning reletting the

property (if that was Lagoon's intention) does not make it reasonable to assume that Lagoon would not be able to do so for six years after its termination of the lease.

Second, the district court reasoned that Landmark had the burden of introducing evidence to show that the liquidated-damages amount was unreasonable. The district court stated, "Landmark Theatres does not produce evidence or identify how the acceleration clause . . . is unreasonable or unconnected to Lagoon Partners' damages from its breach of the lease" and that such evidence "is critical if the court was to determine that the amount due under the acceleration clause was unreasonable." The district court did not cite any legal authority for the proposition that Landmark bore an evidentiary burden with respect to the enforceability of the liquidated-damages clause. To the contrary, the *Gorco* opinion indicates that Lagoon bore that evidentiary burden. The supreme court in *Gorco* reasoned that "the record is almost devoid of any evidence that would tend to support a conclusion that the sum stipulated for liquidated damages" was reasonable. *Id.* at 76. The *Gorco* opinion demonstrates that the proponent of a liquidated-damages clause bears the burden of introducing evidence to justify the liquidated-damages clause.

Third, the district court reasoned that the liquidated-damages amount is reasonable because the lease provides that the value of future rent obligations must be discounted by seven percent per year. According to the district court, the seven-percent discount accounted for the uncertainty as to whether Lagoon would be able to collect rent from a future tenant. But the lease states that the seven-percent discount is intended to account for the "present value" of future, accelerated rent payments. The district court recognized as much in one part of its order, stating that the parties agreed that the seven-percent

20

discount "would establish the 'present value' of the remaining rents." But the district court erred by stating that the seven-percent discount made the liquidated-damages amount more reasonable by accounting for uncertainty as to whether Lagoon would be able to relet the property.

Fourth, the district court cited this court's opinion in *Lariat Companies, Inc. v. Baja Sol Cantina EP, LLC*, No. A12-2202, 2013 WL 4404589 (Minn. App. Aug. 19, 2013), for the proposition that a liquidated-damages clause is enforceable and, therefore, reasonable in its amount. The contract in *Lariat* was a commercial lease, but the liquidated-damages clause was significantly different from the liquidated-damages clause in this case. Specifically, the liquidated-damages clause in *Lariat* incorporated the concept of mitigation by providing that the accelerated amount of rent due must be offset by "the amount Tenant reasonably demonstrates that Landlord would in all likelihood receive from leasing the leased premises to another tenant for said period, taking into account the cost of reletting, the then-current market conditions, the time the leased premises was vacant and other similar costs." *Id.* at *2. Because the liquidated-damages clause in this case does not account for Lagoon's duty to mitigate damages, *Lariat* is distinguishable.

Thus, the liquidated-damages clause is *not* "a reasonable forecast of just compensation for the harm that is caused by the breach." *See Gorco*, 99 N.W.2d at 74-75.[3]

_____

[3]This conclusion is consistent with the opinions of courts in other states that have held that a liquidated-damages clause in a commercial lease agreement does not provide a reasonable estimate of a landlord's actual damages because it does not consider the landlord's duty to mitigate damages. *See Tremitek, LLC v. Resilience Code, LLC*, 535 P.3d 1005, 1011-12 (Colo. App. 2023); *Quintero-Chadid Corp. v. Gersten*, 582 So. 2d 685, 688-89 (Fla. App. 3d Dist. 1991); *Gary Outdoor Advert. Co. v. Sun Lodge Inc.*, 650 P.2d 1222,

That conclusion is an additional reason why the liquidated-damages clause in the parties' lease is unenforceable.

In light of our conclusion that the liquidated-damages clause is unenforceable as a matter of law, we need not consider Landmark's alternative argument that there are genuine issues of material fact concerning its enforceability.

**D.**

Before concluding, we will briefly address Landmark's last argument, that the district court erred by not deferring a ruling on Lagoon's summary-judgment motion so that Landmark could continue to conduct discovery on the issue of Lagoon's mitigation efforts.

In opposing Lagoon's summary-judgment motion, Landmark's attorney submitted an affidavit stating that Lagoon's discovery responses "do not adequately address plaintiff's mitigation of damages," that documents and additional interrogatory answers "on plaintiff's redevelopment of the Uptown are needed for defendant to determine the extent of plaintiff's mitigation and oppose plaintiff's summary-judgment motion," and that a deposition of Abdul also was needed for the same purpose. Landmark's request complied with the applicable procedural rule. *See* Minn. R. Civ. P. 56.04.

The district court considered Landmark's request but denied it on the ground that evidence of Lagoon's mitigation was "not likely to produce evidence related to the specific

---

1224-25 (Ariz. 1982); *see also Aurora Bus. Park v. Albert, Inc.*, 548 N.W.2d 153, 157 (Iowa 1996) (concluding that liquidated-damages clause was reasonable because it considered landlord's duty to mitigate).

issues raised in the pending motion." That ruling was predicated on the district court's decision that the liquidated-damages clause is enforceable as a matter of law. The district court's ruling on Landmark's rule 56.04 request was logical in light of the district court's ruling on the enforceability of the liquidated-damages clause. But, as explained above in parts B and C, the district court's ruling on the enforceability of the liquidated-damages clause was erroneous.

To be clear, mitigation is an issue for further proceedings in the district court, including trial. Accordingly, Landmark is entitled to an opportunity to conduct discovery on that issue and all other issues related to Lagoon's request for damages.

## DECISION

The district court erred by concluding that the liquidated-damages clause in the parties' lease is enforceable, by granting Lagoon's summary-judgment motion, and by entering judgment in favor of Lagoon in the amount of $1,808,470. The liquidated-damages clause in the parties' lease is unenforceable because actual damages caused by Landmark's breach are capable of accurate estimation and because the amount of liquidated damages, which does not account for the landlord's duty to mitigate damages, is not a reasonable forecast of actual damages. Therefore, we reverse and remand for further proceedings.

**Reversed and remanded.**

23